(C.D. 3885)

SEKISUI PRODUCTS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 17, 1969)

*Rode & Qualey (Ellsworth F. Qualey* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Thomas A. S. Fernandes* and *Andrew P. Vance*, trial attorneys), for the defendant.

Maletz, Judge: This case involves the question as to the proper tariff on corrugated plastic (polyvinyl chloride) panels that were imported from Japan and entered in 1967 at the port of New York. They were classified by the regional commissioner of customs under item 774.60 of the Tariff Schedules of the United States (19 U.S.C. § 1202) as other articles of rubber or plastics not specially provided for, and assessed with duty at the rate of 17 percent ad valorem.

Plaintiff protests this classification and claims that the imported panels are properly classifiable under item 771.42 as flexible sheets of plastics, not of cellulose plastic, dutiable at the rate of 12½ percent ad valorem. We sustain the protest.

Set out below are the statutory provisions that are pertinent to the controversy:

Classified under:

Schedule 7, Part 12, Subpart D:

　　　　Articles not specially provided for, of rubber or plastics:

　　　　*　　*　　*　　*　　*　　*　　*

774.60　　Other _____ 17% ad val.

Claimed under:

Schedule 7, Part 12, Subpart B:

Subpart B headnotes:[1]

　　　1. This subpart covers rubber or plastics products * * * in the following forms:

*　　　*　　　*　　　*　　　*　　　*　　　*

　　　　(b) film, strips, sheets, and plates, all the foregoing (whether or not printed, embossed, polished, or otherwise surface-processed) made or cut into rectangular pieces over 15 inches in width and over 18 inches in length; and

　　　　(c) filaments, rods, seamless tubing, and profile shapes, all the foregoing whether or not polished or otherwise surface processed, or cut into lengths which are over 15 inches.

　　　2. This subpart does not cover—

*　　　*　　　*　　　*　　　*　　　*　　　*

　　　(iv)　film, strips, sheets, and plates, which—

　　　　　　(A)　have been made or cut into non-rectangular shapes of any size, or

　　　　　　(B)　measure not over 15 inches in width, or

　　　　　　(C)　measure not over 18 inches in length, or

　　　　　　(D)　have been ground on the edges, drilled, milled, hemmed, or otherwise processed (except surface-processed); * * *

*　　　*　　　*　　　*　　　*　　　*　　　*

---

[1] Subpart B, headnotes 1(b) and 2(iv) (B) and (C) were amended by §§ 2(a), 80(1), (2) of the Tariff Schedules Technical Amendments Act of 1965, 79 Stat. 933, 949. Prior to such amendment, the subpart covered only sheets, etc. measuring over 21 inches in width and over 51 inches in length.

Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Not of cellulosic plastics materials:
Film, strips, and sheets, all the foregoing which are flexible:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

| | | |
|---|---|---|
| 771. 42 | Other_____ | 12.5% ad val. |

The facts as shown by the record are these.[2] Plaintiff is in the business of importing and distributing various kinds of building products made of plastic, including the corrugated panels that are involved here. Such panels are imported in widths of 26 inches and lengths of 8, 10, and 12 feet. They are sold by plaintiff to wholesalers, distributors, and lumber yards throughout the United States, and are resold for use as fences, carport-, patio- and swimming pool-enclosures, and room dividers. They are not made of a cellulose plastic material.

The panels are produced in the following manner in a continuous process: Polyvinyl chloride resin, stabilizer and pigment are mixed in a blender and then put through a pelletizing extruder. The extruded material is chopped into compound pellets which are then placed in an extruder and heated, following which the material is extruded in a round, hollow pipe shape—approximately 11 to 12 inches in diameter. As it comes out of the extruder, the material is slit at the top by a knife thus forming a sheet which then goes through a forming machine that imparts the corrugations. From that machine the corrugated panel is pulled into a shearing machine which cuts it to the desired lengths of 8, 10, or 12 feet.

The corrugated panels so produced are not drilled, hemmed, milled or otherwise processed. Nor are the edges ground. Indeed, nothing is done to the panels after they are cut to the desired length. As imported, the panels can be bent lengthwise along the corrugations into an oval shape, with both ends touching. After release, they return to their original shape. Likewise, the panels—with some difficulty—can be bent widthwise against the corrugations until both ends join. When released after such bending, the panels will again reassume their original shape, but show evidence of creasing.

Against this background, it is not disputed that the imported panels comply with the following requirements specified by the headnotes to subpart B: They are rectangular in shape; they are over 15 inches in width and over 18 inches in length; and they have not been ground on the edges, drilled, milled, hemmed or otherwise processed.

---

[2] The record consists of the testimony of two witnesses for plaintiff and six exhibits introduced by plaintiff. Defendant did not call any witnesses or offer any exhibits.

This, however, does not end the matter. For in order to prevail on its claim under item 771.42, the parties agree that plaintiff had the burden of showing, in addition, (1) that the imported panels consist of "sheet"; (2) that such panels are "flexible"; and (3) that they are not in the form of a profile shape. Defendant insists that plaintiff's proof is wanting in each of these respects.

We first consider whether the presence of the corrugations means that the imported panel is something other than a "sheet"—as defendant contends. On this aspect we think it clear that the fact that the panels in question are corrugated does not take them out of the category of sheets. See *Otis McAllister & Co.* v. *United States*, 27 CCPA 4, C.A.D. 52 (1939). Thus the *Explanatory Notes to the Brussels Nomenclature* (1955), Volume 1, Section VII, p. 372, which encompasses the present items, states:

> (5) Plates, *sheets*, strip, film and foil, whether or not containing fillers or colouring matter, may be printed or otherwise surface-worked (polished, embossed, coloured, etc.) *or merely corrugated, but not otherwise worked.* * * * [Emphasis added.]

Likewise, it is apparent from various dictionary definitions that an article may constitute a "sheet" whether or not it is corrugated. For example, Webster's *Third New International Dictionary of the English Language, Unabridged* (1963), defines a "sheet" as follows:

> Sheet, n. * * * 5: a broad thinly expanded portion of metal or other substance: as *a:* a plate forming part of a tank or boiler regardless of thickness *b:* a portion of metal less than about a quarter or sometimes an eighth of an inch in thickness—distinguished from plate * * * 6: all of a surface so connected that it is possible to pass from any one point of it to any other without leaving the surface * * *

To similar effect is the definition in Funk & Wagnalls *New Standard Dictionary of the English Language* (1956):

> Sheet, n. 1. A very thin and broad piece of any substance; that which is or can be spread as upon a surface, or can be laid in broad folds; anything having considerable expanse with very little thickness. * * *

Finally we note that schedule 6, part 2, subpart B of the tariff schedules—which covers iron and steel—recognizes that the presence of corrugations does not prevent an article from constituting a "sheet." Thus headnote 3(g) of this section of the tariff schedules states: "Sheets are flat rolled products, whether or not corrugated or crimped * * *."

Defendant next insists that plaintiff has failed to prove that the merchandise is "flexible." It is agreed by the parties that the word "flexible" is properly defined as follows in Webster's *Third New International Dictionary of the English Language, Unabridged* (1961):

> 1: capable of being flexed: capable of being turned, bowed, or twisted without breaking. * * * Syn. Elastic, resilient, springy, supple: Flexible is applicable to anything capable of being bent, turned, or twisted without being broken and with or without returning of itself to its former shape.

As previously noted, the imported panels can be bent into circular form along the corrugations, after which they return to their original shape. Likewise, the panels—with some difficulty—can be bent widthwise against the corrugations until both ends join. When released after such bending, the panels will again reassume their original shape, but show evidence of creasing. These characteristics clearly place the imported panels within the accepted definition of the word "flexible." The fact that it is more difficult to bend the importations against the corrugations scarcely detracts from the fact that they are flexible. There is certainly no requirement that for an article to be flexible it must be capable of being bent, bowed or twisted in *every* direction. A bow, for instance, used for archery purposes is obviously flexible—that being the very purpose of its construction. Yet it would be practically impossible to flex or bend it in more than one direction. Indeed, even copper tubing has been held to be flexible. *Hensel* v. *United States*, 2 Ct. Cust. Appls. 221, T.D. 31951 (1911). A fortiori, the imported panels here involved are manifestly flexible. Examination of the samples, without more, makes this apparent. For such examination shows that they are "springy," "elastic," "resilient" and "supple"—which are the synonyms for the term "flexible" given in the dictionary definition.

The last argument made by defendant is that the imported panels are in the form of "profile shapes" and therefore cannot fall within item 771.42—which item, the parties agree, applies only to film, strips and sheets. However, the record establishes that the imported panels are not "profile shapes," as that term is generally accepted in the plastics industry. In this connection, the undisputed testimony of plaintiff's expert witness shows that a "profile shape," as that term is generally understood in that industry, is one that is a "complexity of curves and surfaces" as opposed to either a plane or round surface, or a "corrugated surface which is exceedingly simple."

It is also worthy of mention that subpart B, headnotes 1 (b) and (c), differentiate between sheet, film, strips and plates on the one hand, and filaments, rods, seamless tubing and profile shapes on the

other. Headnote 1(b) covers sheets, plates, etc., and specifies that they must be rectangular in shape. By contrast, headnote 1(c) covers profile shapes, etc., and specifies only that they meet certain length requirements. This would seem clear indication that an imported article that is rectangular in shape and of the required width and length is to be classified as a sheet as distinguished from a profile shape.

The protest is sustained. Judgment will be entered accordingly.