**INTEROCEAN CHEMICAL & MINER-
ALS CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 86–10–01268.**

United States Court of
International Trade.

May 31, 1989.

Peter S. Herrick, Miami, Fla., for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, New York City (Michael T. Ambrosino), for defendant.

OPINION

MUSGRAVE, Judge.

BACKGROUND

Plaintiff is the importer of the merchandise in question, frozen crabmeat and crab claws. The merchandise was imported into the ports of Miami, Seattle and Boston. Plaintiff challenges the classification of the merchandise under item 114.15, Tariff Schedules of the United States ("TSUS") which assesses duty at the rate of 7.5%.

Plaintiff claims that the merchandise is properly classified under item 114.25 TSUS.

The two sections in question provide as follows:

```
"Shellfish, fresh, chilled, frozen, etc. (con.):
     Crabs:
          Crabmeat:
114.15          Fresh, chilled or frozen ............................. 7.5% ad val.
                Prepared or preserved (including pastes and sauces):
114.20          In airtight containers ................................ 11% ad val.

                Snow crab (Chionoecetes bairdi, C. opolio, C. tanneri and C. angula-
                tus
                Other ................................................
114.25          Other .......................................... 5.3% ad val." [1]
```

Both the plaintiff and the government agree that the final product, frozen Korean Snow crabmeat and claws, is the result of the following process. The Snow crab is harvested at sea and taken alive to a processing plant. There the crab is butchered, cleaned, separated into clusters and washed in fresh water. They are then boiled in a 6% brine solution until fully cooked. The clusters are next cooled and washed in fresh water in order to halt the cooking process after which the crabmeat is extracted from the shell, separated from the crab claws, packaged in non-airtight containers and frozen.

Plaintiff argues that the crabmeat in question has been subjected to a cooking, cleaning and preserving process before freezing which in effect removes it from classification under item 114.15. Plaintiff argues that the processing of the crabs, as discussed above, places it more properly within the definition of "prepared or preserved," crabmeat as intended by item 114.-25. Plaintiff states, (Pretrial Order, p. 7):

The meat of crab can be extracted from the shell in a raw, inedible state by blanching the crab for approximately one minute in boiling water prior to extraction. This crabmeat, raw, uncooked and inedible, can then be frozen and imported in this condition. Plaintiff contends that this raw, uncooked, inedible and frozen crabmeat is properly classifiable under item 114.15, TSUS. Plaintiff contends that the crabmeat which is the subject of this action is distinguishable from the raw, inedible, frozen crabmeat just de-

scribed in that this product is prepared or preserved by significant further processing, advancing its condition and value for its intended use to a fully cooked, ready-to-eat food for human consumption; Thus properly classifiable under item 114.25, TSUS.

The plaintiff presented testimony from Mr. Murray Andrews (who was designated as an expert by the Court) in support of this argument. (Trial Transcript, p. 9). After describing the so-called "one-step" and "two-step" cooking processes, (Tr. T. pages 11–24), Mr. Andrews stated his opinion that it is technically possible to package and freeze crabmeat after blanching it (which only partially cooks the meat) and extracting it from the shell ... the "two-step" cooking process. (Tr. T. p. 28). He further stated the opinion that freezing is a means of preserving crabmeat; (Tr. T. p. 31) and that preparation "could include preparing by cooking; preparing by cooking and packaging; ... further processed in some manner." (Tr. T. p. 39). As stated above his characterizations would result in the crabmeat being properly classified under section 114.25, rather than section 114.15. However, on cross-examination by the defendant, Mr. Andrews stated that he was unaware of any blanched crabmeat that was sold on the United States market. (Tr. T. p. 53).

The government argues that the crabmeat:

is specifically provided for *eo nomine* under item 114.15 TSUS. Fresh crab-

---

**1.** The tariff rate decreased gradually from 6.6% in 1982 to 5.3% by 1986.

meat is commercially and technically defined as crabmeat that has been fully cooked and suitable for human consumption. Therefore, the imported merchandise is fresh crabmeat that has been preserved by freezing the crabmeat from the time it is processed to the time it is thawed for human consumption. Freezing is a form of preservation that is specifically provided for under item 114.-15 TSUS. (Pretrial Order, p. 8).

The Government presented expert testimony from Mr. Robert Learson and tendered into evidence three documents in support of their position.[2] (Tr. T. p. 105) Mr. Learson's opinion was that there are no crabmeat processors that freeze crabmeat without thoroughly cooking it, because the international marketplace demands a fully cooked crabmeat. He stated, "the term 'fresh crabmeat' indicates cooked crabmeat chilled in the unfrozen form. The term 'frozen crabmeat' means fresh cooked crabmeat which has been frozen." (Tr. T. p. 65).

Mr. Learson also stated his opinion that the so-called two-step blanching process was not commercially feasible because the resulting product—partially cooked crabmeat—would have an extremely short shelf-life. (Tr. T. p. 77).

### DISCUSSION

Upon careful examination of the two tariff provisions it becomes immediately apparent that the merchandise does not fall neatly into either one category or the other because of the somewhat ambiguous language of the two provisions. Including the merchandise at issue here (cooked and frozen crabmeat) in section 114.25 "prepared or preserved crabmeat" would result in section 114.15 being a nullity because *all* imported crabmeat is cooked. Therefore there would never be an occasion to classify any product under section 114.15. On the other hand, including this merchandise under section 114.15 is not clearly appropriate because of the possibility that the crabmeat has in fact been subjected to preparation and/or preservation. Section 114.15 is further unclear because the "fresh" designation can never be used; crabmeat, however defined, deteriorates rapidly without some method of prolonging its value. For all these reasons, a close study of the statutory language and legislative history must be undertaken in order to discern which provision is more appropriate.

■ When interpreting statutory language it is necessary to consider the commercial designation of any terms used. "It is well settled in customs law that, when not otherwise defined in the TSUS or indicated by legislative history, the correct meaning of a term in a tariff provision is the common meaning understood in trade and commerce." *Schott Optical Glass, Inc. v. United States*, 612 F.2d 1283, 1285 (CCPA 1979), (citing *United States v. Rembrandt Electronics, Inc.*, 542 F.2d 1154, 64 CCPA 1 (1976), *Barnebey–Cheney Co. v. United States*, 487 F.2d 553, 61 CCPA 10 (1973), *Trans–Atlantic Co. v. United States*, 471 F.2d 1397, 60 CCPA 100 (1973)).

It is additionally the rule, however, that "in order to establish a commercial designation of a tariff term, the burden falls upon the party seeking to establish the commercial designation to demonstrate that such tariff term has a meaning which is general (extending over the entire country), definite (certain understanding), and uniform (the same everywhere in the country)." *Rohm and Haas Co. v. United States*, 5 CIT 218, 568 F.Supp. 751, 757 (1983), aff'd, 727 F.2d 1095 (Fed.Cir.1984), (citing *S.G.B. Steel Scaffolding and Shoring Co. Inc. v. United States*, 82 Cust.Ct. 197, C.D. 4802 (1979)).[3]

---

**2.** Exhibit A—NOAA technical report, in NMFS 55, Approximate Composition, Energy Fatty Acid, Sodium and Cholesterol Content of Finfish, Shellfish and their Products, U.S. Department of Commerce, National Oceanic and Atmospheric Administration, National Marine Fisheries Service, July 1987.

Exhibit B—*The Freezing Preservation of Foods, Volume II, Freezing of Precooked and Prepared Foods,* by Donald K. Tressler.

Exhibit C—"Federal Specification, PP–C656a, Crabmeat, Cooked: Chilled and Frozen, Commissioner of Federal Supply Service, General Services Administration, March 6, 1956."

**3.** In addition, it is a "well established rule that

It is the government's position that the term "crabmeat" has a commercial meaning that differs from its common interpretation as simply the meat of a crab. As stated above, the defendant has presented expert testimony and documentary evidence to that effect and it appears to be beyond any doubt that crabmeat is not sold commercially unless it has first been cleaned, shelled and fully cooked. This is what distinguishes "crabmeat" from "crab" in one form or another.

The government conceded that it may be technically possible to blanch crabmeat and freeze it only partially cooked, but maintained that such a product would have to be labelled "partially cooked frozen crabmeat" because the common understanding in the seafood market is that frozen crabmeat is fully processed and cooked. In fact, both the plaintiff's witness and the defendant's witness testified that they knew of *no* producer in the United States or abroad that actually sells frozen crabmeat that has not been fully cooked. That is, the two-step blanching method simply is not a commercial reality.

■ Plaintiff has focused on what they believe is technically feasible for the crabmeat industry.[4] This ignores, however, the fact that the commercial designation of the term "frozen crabmeat" is what controls in this case. As has been previously stated, the government's expert has presented evidence of such a commercial designation and the plaintiff has failed to refute it. The fact that a different method of processing crabmeat may be technically feasible is irrelevant. The defendant has satisfied the requirements of *Rohm & Haas* by showing

that "crabmeat" as used in commerce, has a meaning which is general, definite and uniform: it is the cooked meat of the crab.

■ Plaintiff also argues that even if the crabmeat can be classified as "frozen" pursuant to item 114.15 TSUS, it is better classified as "prepared or preserved" because of the additional processing needed to bring it to its final condition. Beyond the cooking process, plaintiff points to the cleaning, addition of salt and freezing as elements of both preparation and preservation. Without these steps, plaintiff argues the crabs would deteriorate rapidly and be unusable.

However, as discussed above, first of all, it is not the common understanding of the words "preparation" and "preservation" that is controlling. Rather, it is the commercial designation of that language.[5] Secondly, the evidence presented at oral argument shows that the amount of salt added to the crabmeat was, by itself, not only insufficient to preserve it but could not even be detected by taste. (T. p. 74). Furthermore, even absent the commercial designation of the language as stated above, it has been held that freezing, being a temporary preservation is neither a preparation nor a preservation for tariff purposes. *Frosted Fruit Products Co. v. United States*, 18 Cust.Ct. 119, C.D. 1054 (1947).

Finally, and most importantly, the defendant has presented strong arguments by way of the legislative history of the tariff provisions involved. This history shows that the original definition of "Crabmeat" intended a fully cooked product. The *Sum-*

---

'before the plain understanding of a term can be deviated from it must be shown by plenary proof to have a different import in trade and commerce.'" *Excelsior Import Associates, Inc. v. The United States*, 66 CCPA 1, C.A.D. 1212, 583 F.2d 513 (1978), citing *U.S. v. Wells, Fargo and Co.*, 1 CCPA 158, 161, T.D. 31211 (1911). The rule was "intended to apply to cases where the trade designation is so universal and well understood that the Congress and all the trade, are supposed to have been fully acquainted with the practice at the time the law was enacted." *Jas. Akeroyd and Co. et al. v. U.S.*, 15 Ct.Cust. App. 440, T.D. 42641 (1928).

**4.** And the fact that this conclusion is based on one set of experiments conducted by the plaintiff's witness leaves this conclusion open to criticism.

**5.** *See, Green Giant Co. v. The United States*, 61 CCPA 46, 495 F.2d 775, 778 (1974). There the Court of Appeals held that mushrooms which had been washed, blanched and frozen were "prepared or preserved" for tariff purposes. That was because, "the uncontroverted evidence indicated that the term "fresh mushrooms" *as used in commerce* referred to a mushroom which is untreated in any way after picking and removing the root." (Emphasis added).

*mary of Tariff Information* 1929, Vol. 1, p. 169, 70, the *Summaries of Trade and Tariff Information* 1948, Vol. 7, Part 2, p. 138 and the *Summaries of Trade and Tariff Information* 1968, Schedule 1, Vol. 3, p. 115–117 all describe "crabmeat" as being the cooked meat or product of the crab. These sources clearly show that, as used in the sections of the TSUS at issue here, the intended product was cooked. Plaintiff's hypothetical of a partially-cooked or raw crabmeat product is simply not consistent with the legislative history.

### CONCLUSION

For all the above-stated reasons, it is held that plaintiff has failed to overcome the presumption of correctness of the classification by Customs; the crabmeat and crab claws that were imported in this case were properly classified under Section 114.-15 TSUS.