**CENTRAL PRODUCTS CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip No. 96–112.
Court No. 93–06–00317.

United States Court of
International Trade.

July 22, 1996.

Stedina & Deem, Charles P. Deem, New York City, for plaintiff.

Frank W. Hunger, Assistant Attorney General, Joseph I. Liebman, Attorney–In–Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, and Amy M. Rubin, for defendant. Edward N. Maurer, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of Counsel.

Grunfeld, Desiderio, Lebowitz & Silverman LLP, Steven Florsheim and Erik D. Smithweiss, New York City, for amicus curiae FIAP Films Division of Borden, Inc.

## OPINION

WALLACH, Judge:

Central Products ("Central") brought this action to challenge the United States Customs Service's ("Customs") classification of merchandise that Central imported into the United States. The merchandise at issue is polyvinyl chloride ("PVC") in film or sheet form. Customs classified it under subheading 3920.41.00 of the Harmonized Tariff System of the United States ("HTSUS"), which covers "other plates, sheets, film, foil and strip, of plastics, noncellular and not reinforced, laminated, supported or similarly combined with other materials ... Of polymers of vinyl chloride ... **Rigid.**" (emphasis added). This classification incorporates a commercial designation of the term "rigid" based on a technical standard derived from a "modulus of elasticity" test. Central contends that the merchandise was properly classifiable under subheading 3920.42, which covers similar categories of PVC goods that

are **"Flexible"**. This classification is based on the common meaning of "flexible". Customs' classification carries a duty of 5.8%, and Central's classification carries a duty of 4.2%.

Each party has filed a motion for summary judgment pursuant to USCIT Rule 56(d). For the following reasons, the Court grants Central's motion and denies the government's motion.

## I.

### Standard for Summary Judgment

"Summary judgment is proper in the Court of International Trade where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits [or declarations], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Texaco Marine Services v. United States*, 44 F.3d 1539, 1543 (Fed.Cir.1994) (quoting USCIT Rule 56(d)). The Court reviews the law to determine the facts that must be established in order for a party to win judgment, and reviews pleadings, depositions, declarations, affidavits, documents and other evidence presented by the parties to determine whether there is a bona fide controversy as to any material fact. *Id.; Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The Court finds no such controversy present here, and therefore that disposition by summary judgment is appropriate.

## II.

### Burden of Proof

■ Customs' factual determinations are entitled to a presumption of correctness. 28 U.S.C. § 2639(a)(1) (1988); *Goodman Mfg., Inc. v. United States*, 69 F.3d 505, 508 (Fed. Cir.1995). The burden of proving that Customs' determination is incorrect rests with the party challenging it. 28 U.S.C. § 2639(a)(1). However, where "there [is] no

factual dispute between the parties, the presumption of correctness is not relevant." *Goodman*, 69 F.3d at 508.

■ It has long been held that "the meaning of a tariff term is presumed to be the same as its common or dictionary meaning." *Brookside Veneers v. United States*, 847 F.2d 786, 789, 6 Fed.Cir. (T) 121, 125 (1988), *cert. denied* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988) (quoting *Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097, 2 Fed.Cir. (T) 28, 29 (1984) (quoting *Bentkamp v. United States*, 40 C.C.P.A. 70, 78, 1952 WL 5939 (1952))); see also, *Texaco Marine Services*, 44 F.3d at 1544 (quoting *Brookside Veneers* and applying the principle to HTSUS). One who argues that a term in the tariff laws should not be given its common or dictionary meaning must prove that "there is a different commercial meaning in existence which is definite, uniform, and general throughout the trade." *Austin Chemical v. United States*, 835 F.2d 1423, 1427, 6 Fed. Cir. (T) 42, 47 (1987) (quoting *Rohm & Haas*, 727 F.2d at 1097, 2 Fed.Cir. (T) at 29); *see Cadwalader v. Zeh*, 151 U.S. 171, 176, 14 S.Ct. 288, 290, 38 L.Ed. 115 (1894).

■ Here, the government advocates a definition of the tariff term "rigid" that follows a commercial designation, which diverges from the term's common, dictionary meaning. That desire to abandon the common meaning has the effect of shifting the burden of proof to the government. "[I]n order to establish a commercial designation of a tariff term, the burden falls upon the party seeking to establish the commercial designation to demonstrate that such tariff term has a meaning which is general (extending over the entire country), definite (certain of understanding), and uniform (the same everywhere in the country.)" *Interocean Chemical & Minerals Corporation v. United States*, 13 CIT 449, 452, 715 F.Supp. 1093, 1095 (1989) *aff'd* 898 F.2d 1577, 8 Fed.Cir. (T) 45 (1990) (adopting CIT opinion). "Proof of commercial designation is a question of fact to be established in each case."[1] *Rohm & Haas,*

---

1. The presumption of correctness may not apply to factual determinations related to the meaning of tariff terms. *See Goodman*, 69 F.3d at 508.

Even if the presumption does apply, however, Central's factual showing of the lack of support for the purported commercial designation would

727 F.2d at 1097, 2 Fed.Cir. (T) at 29 (quoting *S.G.B. Steel Scaffolding & Shoring Co. v. United States,* 82 Cust.Ct. 197, 206 (1979)).

Thus, to make the case for its definition of "rigid" and prevail against Central's summary judgment motion, the government has a three-part burden of proof: it must provide competent evidence that its commercial designation of "rigid" is general, definite, and uniform.

## III.

### Analysis

This case turns on the definitions of the tariff terms "rigid" and "flexible". Central argues that the merchandise should be classified according to the common or dictionary definition of the term "flexible":

> 1. capable of being flexed: capable of being turned, bowed, or twisted without breaking.... Syn. Elastic, resilient, springy, supple: Flexible is applicable to anything capable of being bent, turned, or twisted without being broken and with or without returning of itself to its former shape.

*Rohm & Haas v. United States,* 5 CIT 218, 225, 568 F.Supp. 751, 757 (1983), *aff'd* 727 F.2d 1095, 2 Fed.Cir. (T) 28 (1984) (quoting *Sekisui Products v. United States,* 63 Cust. Ct. 123, 127 (1969) (quoting Webster's *Third New International Dictionary of the English Language, Unabridged* (1961)). The parties agree that the foregoing is the common meaning of the word "flexible". Defendant's Brief In Response to Brief of Amicus at 5. Moreover, the parties agree that the merchandise is "flexible where flexible is defined as 'capable of being bent without being broken.'" Plaintiff's Statement of Material Facts Not Genuinely In Issue, at ¶ 6; Defendant's Response to Plaintiff's Statement of Material Facts Not In Issue, at ¶ 6.[2]

The government contends, however, that the common meaning of the term "flexible" should not control here. Rather, it argues that the technical definition of "rigid" promulgated by the American Society of Testing Materials ("ASTM") constitutes a commercial designation that Congress adopted when it enacted the HTSUS. The ASTM definition is based on a testing standard of a plastic sheet's modulus of elasticity, found at ASTM Designation 883, as follows:

| TERM | MODULUS OF ELASTICITY |
| --- | --- |
| rigid | greater than 100,000 pounds per square inch ("psi") |
| semi-rigid | between 10,000 and 100,000 psi |
| non-rigid | less than 10,000 psi. |

Decl. of Frank W. Long at ¶ 6 and attachment 2.

Because the merchandise has a modulus of elasticity of greater than 100,000 psi, it qualifies as "rigid" under this standard. Long Decl. at ¶ 8.

■ The government's primary contention is that a Congressional intent to adopt the ASTM standard is evident from a change in the tariff language from the old TSUS to the newer HTSUS. In the TSUS, the applicable items were 771.41: "flexible" and 771.42: "other". When it enacted the HTSUS, Congress retained the term "flexible" and changed the term "other" to "rigid". That, however, is not enough to convince the Court of Congressional intent to adopt the ASTM testing standard, for several reasons.

First, with regard to the language itself, ASTM's testing standard has three categories: rigid, semi-rigid and non-rigid. Each of these descriptions is defined by a range of modulus of elasticity. Had Congress intended to adopt the ASTM scheme, *a fortiori,* it would have adopted all three categories. Moreover, there is no reason to believe that

---

shift the burden of proof onto the government. Central submitted declarations of individuals with extensive experience in the industry and with ASTM committees, who stated from personal knowledge that the modulus of elasticity test is not commonly used in the industry to determine whether PVC sheet or film is rigid or flexible. Decl. of Zehrung, Herring, and Denning. For the reasons explained *infra,* the government did not present competent evidence to the contrary.

**2.** The government added the *caveat* that it contends that the merchandise "is not flexible in the popularly, commonly, commercially or ordinarily understood sense of being expandable or elastic or of being capable of being folded without causing permanent creasing." Defendant's Response to Plaintiff's Statement of Material Facts Not In Issue, at ¶ 6. This contention is not relevant.

Congress would have retained the old TSUS term "flexible" had it intended a wholesale restructuring of that portion of the tariff system. "Flexible" is not used as a category in ASTM Designation 883. Finally, even assuming that "flexible" in HTSUS is intended to be synonymous with "non-rigid", as it is in common usage, the government's interpretation offers no principled means of classification of semi-rigid goods.

Second, Congress has indicated its intent to adopt technical standards expressly in other places in the HTSUS, by setting forth the standards in explanatory notes. For example, in Additional U.S. Note 1 to Chapter 39 of the HTSUS, Congress wrote:

> For the purposes of this chapter, the term *"elastomeric"* means a plastics material which after cross-linking can be stretched at 20° C to at least three times its original length and that, after having been stretched to twice its original length and the stress removed, returns within five minutes to less than 150 percent of its original length.

Similarly, in Additional U.S. Note 2 to Chapter 27 of HTSUS, Congress expressly defined "petroleum oils" in terms of ASTM standards:

> For the purposes of heading 2710, *"petroleum oils"* includes only products having:
>
> (a) A Congealing Point (ASTM D 938) of less than 30° C; or
>
> (b) If the Congealing Point is not less than 30° C:
>
> (i) A density at 80° C of less than 0.942 and Worked Cone Penetration (ASTM D 217) or a Cone Penetration (ASTM D 937) at 25° C of not less than 350; or
>
> (ii) If the density at 70° C is not less than 0.942 having a Needle Penetration (ASTM D 5) at 25° C of not less than 400.

These illustrations show what Congress does when it intends to adopt technical characteristics to define tariff terms. *See also Izod Outerwear Div. v. United States,* 9 CIT 309, 314–15, 1985 WL 25770 (1985). It did not do so in connection with the HTSUS subheadings at issue here.

It is more likely that Congress adopted the word "rigid" in order to maintain uniformity with the Harmonized Commodity Description and Coding System of the Customs Cooperation Council. The Explanatory Notes that the Customs Cooperation Council published do not include any technical standard, but instead offer examples of flexible and rigid PVC that comport with the common understanding of the words:

> In flexible sheet form, polyvinyl chloride (PVC) is used widely as a waterproof material for curtains, aprons, raincoats, etc., and as high grade imitation leather for upholstery and interior decoration in all types of passenger transportation. Rigid PVC sheets find application in the fabrication of covers, ducts, tank linings and many other items of chemical plant equipment.

Harmonized Commodity Description and Coding System Explanatory Notes to Heading 39.04, p. 559.[3]

Finally, the judicial history of the tariff term "flexible" suggests legislative ratification of the common definition adopted in *Sekisui, supra,* and *Rohm & Haas, supra.* The CIT decided *Sekisui* in 1969 under TSUS, applying the dictionary definition of "flexible" quoted above to corrugated PVC panels. These were used as fences, carport enclosures and room dividers, *inter alia.* The court found them to be flexible, "within the accepted definition of the word" because:

> they can be bent into circular form along the corrugations, after which they return to their original shape. Likewise, the panels—with some difficulty—can be bent width-wise against the corrugations until both ends join. When released after such bending, the panels again resume their

---

**3.** It is notable, as well, that the European Communities defines "flexible" in its harmonized Combined Nomenclature as follows: "products which can, without fracturing, be bent manually around a cylinder of a diameter of 18 cm, at a temperature of between 15 and 30° C, are considered as flexible products." Explanatory Notes to the Combined Nomenclature of the European Communities, Headings 3920 42 11 to 3920 42 99.

original shape, but show evidence of creasing.

*Sekisui,* 63 Cust.Ct. at 127.

Eight years later, in 1977, Congressman Charles Vanik, then Chairman of the Subcommittee on Trade of the House Committee on Ways & Means, sought from the Commissioner of Customs an explanation of the interpretation of "flexible" as it applied to acrylic sheets. *Rohm & Haas,* 727 F.2d at 1098, 2 Fed.Cir. (T) at 30. The then Acting Commissioner of Customs, G.R. Dickerson, responded in writing that Customs' practice "is guided by the case of *Sekisui Products*" and quoted at length from the court's application of the common definition of "flexible". *Rohm & Haas,* Appendix 1, 5 CIT at 228–19, 568 F.Supp. at 759. Mr. Dickerson then complained:

> The court's test is exceptionally broad and has caused some administrative difficulty.... A quantitative test, based on the modulus of elasticity in flexure would be easier to administer and lead to more consistent results.

*Id.* at 229, 568 F.Supp. at 759.

As discussed by the CIT and the Federal Circuit in their *Rohm & Haas* opinions, Congress declined to change the definition of the term, despite knowing full well how the courts were interpreting it. *Rohm & Haas,* 5 CIT at 225–26, 568 F.Supp. at 757–58; 727 F.2d at 1098, 2 Fed.Cir. (T) at 30. Manifestly, then, Congress endorsed the definition of "flexible" as it was explained in *Sekisui* and the Acting Commissioner's letter. Five years after the *Rohm & Haas* decision, Congress had another opportunity to address this issue. In 1988, it enacted the HTSUS and, although it added the word "rigid" to the subheadings covering PVC sheet and film, it conspicuously left the word "flexible" in the tariff schedule without further definition. Thus, circumstances have not changed since *Rohm & Haas* was decided. Congress's acceptance of the common meaning of "flexible" remains manifest in the HTSUS.

For the foregoing reasons, the Court does not find Congressional intent to adopt a technical or commercial definition of the tariff term, "flexible", based on modulus of elasticity. The Court finds the converse, that Congress intended the word to be interpreted and applied according to its common definition.

The Court also finds that the government has not shown a genuine issue as to the existence of a general, definite and uniform commercial designation of the term "rigid" based on ASTM Designation 883. In support of its position, the government submitted two witness declarations and several pieces of documentary evidence. Taken together, and assuming they are true, they do not provide the factual foundation necessary to establish a commercial designation of the term "flexible".

The Declaration of Frank W. Long reflects his substantial experience in the plastics industry. Mr. Long stated that the "terms 'rigid', 'semi-rigid', and 'non-rigid' have long been considered by the plastics industry as very subjective and difficult to measure by one single test procedure." Long Decl. at ¶ 5. He stated further that ASTM is "the leading authority" on testing procedures, and that the definitions in its *Annual Book of ASTM Standards* "are broadly accepted by the plastics industry." *Id.* Mr. Long explained that "[i]t is widely accepted that the modulus of elasticity ... is an inherent property of plastic ... and can thus be used 'for general purposes of classification.'" *Id.* at ¶ 6. He offered an alternative means of determining whether plastic is flexible or rigid: "A general belief in the plastics industry is that PVC containing little or no plasticizers in film, sheet, plates or pipes should be referred to as 'rigid'." *Id.* at ¶ 7. Under this test, Mr. Long indicated that he would consider the merchandise to be rigid. *Id.* Mr. Long concluded as follows:

> ASTM has developed definitions of rigid, semirigid, and nonrigid plastics based upon the modulus of elasticity as well as specific test procedures for its measurement. The tests are widely accepted in the plastics and PVC industries. They are uniform, understandable, and may be used across the United States.

*Id.* at ¶ 12.

The foregoing are the material excerpts from the Long Declaration. Taken together,

they do not establish that the definition of "rigid" based on ASTM's modulus of elasticity standards is uniform, definite and general as those terms are defined in the case law. *See Interocean Chemical,* 13 CIT at 452, 715 F.Supp. at 1095. Saying that a definition has broad or wide acceptance and that it can or may be used does not rise to the requisite level of acceptance and implementation. *See Rohm & Haas,* 727 F.2d at 1097, 2 Fed.Cir. (T) at 29 (quoted *supra* at footnote 1). In addition, Mr. Long suggested that a second test of rigidity is in common use in the industry, *i.e.,* the presence or absence of plasticizer in sheet or film. Long Decl. at ¶ 7. Here, the government's own declarant undercuts its position. "A commercial designation is not established where there is a conflict in the testimony of trade witnesses as to the commercial meaning of a term." *Rohm & Haas,* 5 C.I.T. at 227, 568 F.Supp. at 757.

■ The government's Declaration of Joan Mazzola is similarly deficient. Ms. Mazzola is a National Import Specialist with Customs, who is responsible for articles of plastic, including the PVC sheet or film at issue here. Mazzola Decl. at ¶¶ 1–3. Ms. Mazzola stated that as part of her work, she has contacted people in the plastics industry for information about trade understanding of terms. *Id.* at ¶ 4. She stated further that she contacted Hoechst–Celanese Corporation in 1988 for information about the industry understanding of "rigid" and "flexible" PVC film. *Id.* at ¶ 5. A copy of that company's response, comprising a letter and a technical report, was attached to the declaration.[4] The re-

sponse said nothing about whether the modulus of elasticity test was universally accepted as defining rigidity in plastic sheet or film. Rather, it presented the modulus of elasticity test as the most reliable of several tests, e.g., heat distortion temperature, elongation, identification of plasticizer in the film and stiffness. *Id.* at attachment 1. The report concludes that "[t]o assure that rigid PVC film is clearly identified, the ASTM definition should be followed." *Id.* at 3. While the report may support the requirement that a commercial designation be definite, nowhere does it say that the test actually is followed, universally or otherwise.

None of the government's other evidence establishes the elements of a commercial designation. All that remains are legally incompetent conclusory assertions in a brief, which are insufficient to withstand summary judgment.

Having found the government's definition of "rigid" incorrect, and consequently that its proffered classification is invalid, it remains to determine whether the classification advocated by Central is correct. The Court finds it is.

■ As discussed above, the definition of the tariff term "flexible" was litigated twice before this court and once before the Federal Circuit with identical results, defining the term "flexible" consistently with Central's contentions. There is no evidence of any intent by Congress to alter this meaning in subsequent legislative history. Having reviewed appropriate dictionary and lexico-

---

4. For the reasons stated in this opinion, this evidence is not probative of the elements of a commercial designation. It also appears not to be admissible. Central objects to the admission of the attachment of the Hoechst–Celanese report to the Mazzola Declaration as hearsay. The government responded that it is admissible under Fed.R.Evid. 803(6), an exception to the hearsay rule for business records: "They are documents received by Ms. Mazzola in the course of her investigations which investigations are a regular part of her job as National Import Specialist." Defendant's Reply to Plaintiff's Brief In Opposition at 2. The Court does not agree with the government's analysis. Had Ms. Mazzola prepared the documents in question herself, they could come within exception 6. However, she did not. As for the person or persons who pre-

pared the document in question, there is no showing that they did so contemporaneously, with knowledge, and in the regular practice of business. Fed.R.Evid. 803(6); *United States v. Bortnovsky,* 879 F.2d 30, 34 (2d Cir.1989) (Report of insurance adjuster may be admitted under 803(6), but not a witness statement that it quoted because "there was no showing that he had a duty to report the information he was quoted as having given."). The Court has also reviewed the application of Fed.R.Evid. 803(24), the catch-all exception to the hearsay rule, and finds that the Hoechst–Celanese document does not qualify because it is not the most probative evidence available on the modulus of elasticity test, and it not probative at all of the breadth of the test's acceptance as a commercial designation.

graphic material, the Court has confirmed that there has been no change in the common definition of the term. Moreover, the parties agree that there is no genuine issue that this is the common definition. Plaintiff's Memorandum in Opposition at 10–11; Defendant's Brief In Response to Brief of Amicus Curiae FIAP Films at 5. Finally, the parties agree that there is no genuine issue that the merchandise falls within the definition, *i.e.* that it is "flexible where flexible is defined as 'capable of being flexed' or 'capable of being bent ... without being broken.'" Plaintiff's Statement of Material Facts Not Genuinely In Issue at ¶ 6; Defendant's Response to Plaintiff's Statement of Material Facts Not Genuinely In Issue at ¶ 6.

### CONCLUSION

For the foregoing reasons, the Court grants plaintiff Central Products' Motion for Summary Judgment and denies defendant United States' Motion for Summary Judgment.

### ORDER

This case having come before the Court for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED, ADJUDGED AND DECREED** that Plaintiff's motion for summary judgment be, and hereby is, granted; and it is further

**ORDERED, ADJUDGED AND DECREED** that Customs' classification of the imported polyvinyl chloride sheet or film under subheading 3920.41.00, HTSUS, with an assessed duty rate of 5.8% *ad valorem* be set aside; and it is further

**ORDERED, ADJUDGED AND DECREED** that Customs reclassify the polyvinyl chloride sheet or film under subheading 3920.42.50, HTSUS, with an assessed duty rate of 4.2% *ad valorem;* and it is further

**ORDERED, ADJUDGED AND DECREED** that each party shall bear its own costs.