BAR ZEL EXPEDITERS, INC., A/C Ben Clements & Sons, Inc., Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 82–29.

United States Court of Appeals, Federal Circuit.

Feb. 4, 1983.

Joseph S. Kaplan, New York City, argued for appellant. With him on the brief was John B. Pellegrini, New York City.

Susan Handler-Menahem, Teaneck, N.J., argued for appellee. With her on the brief were Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., Director David M. Cohen, and Attorney in Charge Joseph I. Liebman, New York City.

Before MARKEY, Chief Judge, and DAVIS and NICHOLS, Circuit Judges.

MARKEY, Chief Judge.

Bar Zel Expediters, Inc. (Bar Zel) appeals from the judgment of the United States Court of International Trade (*Bar Zel Expediters, Inc., A/C Ben Clements & Sons, Inc. v. The United States,* 3 CIT ——, 544 F.Supp. 868 (1982)) holding that the imported plastic fasteners are properly classifiable as "sew-on fasteners", under item 745.63, Tariff Schedules of the United States (TSUS), and refusing classification as "articles not specially provided for, of rubber or plastics", under item 774.60, TSUS. We affirm.

*Background*

The imported merchandise consists of plastic fasteners, known as Tach-Its, used to attach identification tags to clothing and other textile articles.

In practice, a clip of Tach-Its is loaded into a fastening device or "gun" equipped with a hollow needle. The needle is inserted into the article and the fastener is propelled the length of the needle thereby penetrating the article. When the needle is thereafter withdrawn the fastener remains inserted through the article and is held in place by protrusions at either end of its body.

Customs Service officials classified the merchandise under item 745.63.[1] Bar Zel protested that classification and advanced a claim under item 774.60.[2]

The Court of International Trade (Edward D. Re, Chief Judge) sustained Customs' classification, concluding that the imported merchandise comes within the com-

---

1. Item 745.63 provides in pertinent part:

Clasps, handbag and similar frames incorporating clasps, and snap fasteners; all the foregoing and parts thereof:
    Valued not over 20 cents per dozen pieces or parts:
745.63   Sew-on fasteners, and parts thereof ......27.5% ad val.

2. Item 774.60 provides in pertinent part:

Articles not specially provided for, of rubber or plastics:

\*    \*    \*    \*

774.60  Other ................... ............. 8.5% ad val.

mon meanings of "clasp" and "sew-on fastener" and that Bar Zel had not established commercial meanings for those terms different from their common meanings.

### Issue

Whether the Court of International Trade erred in holding the merchandise properly classifiable under item 745.63, TSUS.[3]

### OPINION

Bar Zel says that Tach-Its are neither clasps nor sew-on fasteners because they come within neither the common nor commercial meanings of those terms. We disagree.

I. Common Meaning

A. Clasps

In *United States v. Murphy & Co.,* 13 Ct.Cust.App. 456, 461, T.D. 41348 (1926) and in *United States v. Clarke & Co.,* 13 Ct. Cust.App. 462, 465, T.D. 41349 (1926), the Court of Customs Appeals,[4] discussed the meaning of "clasp" and quoted with approval:

A fastening by which things or the parts of a thing are bound or held together; also, any instrument or bond of connection, as a tendril, the hook that fastens on an eye, a grappling-iron, etc.

*Funk & Wagnalls New Standard Dictionary* (1913).

Under that definition, a clasp need only serve to hold things or parts of things together, i.e., to fasten. Bar Zel concedes that the imported fasteners perform that function.

Bar Zel says, however, that *Murphy* and *Clarke* should not be looked to for the common meaning of "clasp" because those cases concerned issues of relative specificity between two competing tariff provisions, not common meaning. Alternatively, Bar Zel says that the definition should be rejected as overly broad because a "clasp" must nec-

essarily include features of releasability and refastenability.

We do not agree that *Murphy* and *Clarke* did not involve a determination of common meaning. As Chief Judge Re correctly found, "the ... court, in both cases, was required to decide whether the merchandise fell within the provision for 'clasps' ". In so deciding, those courts specifically relied on the recited definition as an expression of common meaning.

Nor do we agree that the quoted definition is overly broad. Though Bar Zel points to sources (e.g., Webster's New International Dictionary of the English Language (2d Ed. 1930)) which include releasability and refastenability as limitations on "clasp", we agree with the trial court that Bar Zel has not thus refuted other sources which omit those limitations.

The trial court's finding of common meaning is moreover amply supported by expert testimony in the record expressing agreement with the *Funk and Wagnalls* definition. That Bar Zel presented contrary testimony is alone no basis for upsetting the trial court's finding.

We conclude, therefore, that the trial court correctly relied on the definition set forth in *Murphy* and *Clarke* in determining that the subject fasteners come within the common meaning of "clasp".

B. Sew-On Fasteners

Bar Zel says the common meaning of "sew-on fasteners" is a device attached with needle and thread to an article and used to open and close the article. It says that which draws the imported fastener through an article is not a needle because it has no eye.

It was undisputed that the imported fasteners are used to attach or fasten materials. The trial court properly limited its inquiry, therefore, to whether the process for affixing the fasteners is a sewing operation. Relying on testimony presented at

---

**3.** Both parties alternatively claim that the merchandise is classifiable under item 745.65, TSUS as "clasps". In view of our disposition, we need not reach that issue.

**4.** Binding precedent in this Court. *South Corp. v. United States,* 690 F.2d 1368 (1982).

trial and lexicographic references, the court determined that the process of affixing is sewing and that the fasteners are thus sew-on fasteners. Bar Zel has offered no basis for upsetting that determination.

II. Commercial Meanings

Where a tariff term has acquired a meaning in the trade which differs from its common meaning and which is "definite, uniform and general throughout the United States", *United States v. Schwab & Co.,* 30 CCPA 72, 78, C.A.D. 218 (1942), the commercial meaning prevails unless Congress has expressed a contrary intent. *Cadwalader v. Zeh,* 151 U.S. 171, 14 S.Ct. 288, 38 L.Ed. 115 (1894).

Though Bar Zel says the commercial designations of "clasps" and "sew-on fasteners" differ from their common meanings and that the imported fasteners are not known as "clasps" or "sew-on fasteners" in the trade, we agree with the trial court that Bar Zel has failed to establish commercial designations for those terms which are "definite, uniform and general throughout the United States". The opinion of Bar Zel's witnesses, that the fasteners are not known as clasps or sew-on fasteners in the garment trade, is not conclusive proof of the required commercial meanings, particularly where, as the trial court observed, much of that testimony is contradictory and basic differences among Bar Zel's own witnesses evidenced absence of a definite, uniform, and general understanding of the terms.

*Conclusion*

Bar Zel having failed to establish error in the trial court's determination that the imported fasteners are included within the common meanings of "clasps" and "sew-on fasteners", and having failed to show error in the trial court's finding that it had not established commercial meanings for those terms which would exclude the imported fasteners, the trial court's judgment upholding the classification under item 745.63, TSUS is affirmed.

AFFIRMED.