tion. *See Simon & Flynn, Inc. v. Time Inc.,* 513 F.2d 832, 185 USPQ 325 (2d Cir.1975).

To delay a court-required payment of $54.40, Beachboard paid $130.00 in filing fees in the Claims Court and this court, and spent time and money preparing and filing briefs. At oral argument he said he has "several cases pending". The unescapable conclusion is that Beachboard is engaged on this appeal in "recreational" litigation, misusing precious and limited resources better spent on meritorious claims of his fellow citizens to whom those resources belong. The present appeal is frivolous.

Beachboard was made aware when he docketed this appeal of this court's opinion in *Asberry v. U.S. Postal Service,* 692 F.2d 1378, 215 USPQ 921 (Fed.Cir.1982) in which it was stated that damages and costs would be awarded in acordance with Rule 38 Fed. R.Civ.P. against those who filed or proceeded with frivolous appeals. *See also, Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 220 USPQ 193 (Fed.Cir.1983).

### DECISION

The Claims Court correctly dismissed the complaint for lack of jurisdiction.

Beachboard shall pay to the government an amount equal to twice its costs on this appeal and damages in the amount of $200.00.

AFFIRMED—COSTS AND DAMAGES AWARDED.

**ROHM & HAAS COMPANY, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 83–1177.**

United States Court of Appeals, Federal Circuit.

Feb. 9, 1984.

William D. Outman, II, Washington, D.C., for appellant. With him on the brief were Albert J. Bartosic, Philadelphia, Pa., and Munford Page Hall, II, Washington, D.C.

John J. Mahon, New York City, for appellee. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field, New York City.

Before FRIEDMAN, RICH and SMITH, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from a decision of the Court of International Trade, 568 F.Supp. 751 sustaining the classification of the imported merchandise by the District Director of Customs at the Port of New York. We affirm.

I

The issue in this case is the proper classification for Customs purposes of sheets of acrylic resin imported from Taiwan. The Customs Service classified the merchandise under item 771.41 of the Tariff Schedules of the United States as "flexible" plastic sheets and admitted them duty-free under the General System of Preferences as products from Taiwan. *See* 19 U.S.C. § 2461–2465 (1982); 19 U.S.C. § 1202 (1982) (General Headnote 3(c) to the Tariff Schedules).

The appellant, which manufactures a similar product which it sells in the United States under the trademark "Plexiglas," filed with the Customs Service pursuant to 19 U.S.C. § 1516 (1982) a petition challenging that classification. The appellant contended that the merchandise should have been classified as "sheets ... of acrylic resin" "other" than "flexible" under item 771.45, and subjected to the duty prescribed for that item. The Customs Service denied the petition and appellant filed the present suit in the Court of International Trade to set aside that determination.

After a trial, the Court of International Trade sustained the classification. The court followed the prior decision of the Customs Court in *Sekisui Products, Inc. v. United States,* 63 Cust.Ct. 123 (1969), which held that the common meaning of "flexible" in item 771.42 (the forerunner of item 771.-41) is the dictionary definition: "capable of being flexed: capable of being turned, bowed, or twisted without breaking...."

Flexible is applicable to anything capable of being bent, turned, or twisted without being broken and with or without returning of itself to its former shape."

The Court of International Trade held that "Congress has chosen not to amend the law to define 'flexible' in a commercial designation even though made specifically aware of the *Sekisui* decision and its ramifications." It ruled that the appellant "failed to prove that the term 'flexible' has a commercial designation based on a trade understanding of the term 'flexible' which differs from its common meaning and is not in conflict with clearly manifested legislative intent." The court concluded that the appellant "has failed to demonstrate a contrary legislative intent other than the common meaning of the term 'flexible' [and] has also failed to show through plenary proof a definite, general and uniform commercial designation."

II

█ A. "The meaning of a tariff term is presumed to be the same as its common or dictionary meaning in the absence of evidence to the contrary." *Bentkamp v. United States,* 40 C.C.P.A. 70, 78 (1952), *quoted with approval in United States v. C.J. Tower & Sons,* 48 C.C.P.A. 87, 89 (1961). One who argues that a term in the tariff laws should not be given its common or dictionary meaning must prove that "there is a different commercial meaning in existence which is definite, uniform, and general throughout the trade." *Moscahlades Bros. v. United States,* 42 C.C.P.A. 78, 82 (1954). The concept of commercial designation "was intended to apply to cases where the trade designation is so universal and well understood that the Congress, and all the trade, are supposed to have been fully acquainted with the practice at the time the law was enacted." *Jas. Akeroyd & Co. v. United States,* 15 Ct.Cust.App. 440, 443 (1928). "Proof of commercial designation is a question of fact to be established in each case." *S.G.B. Steel Scaffolding & Shoring Co. v. United States,* 82 Cust.Ct. 197, 206 (1979) (and cases there cited).

█ As noted, the Court of International Trade ruled that the appellant had not proved that "the term 'flexible' has a commercial designation based on a trade understanding of the term 'flexible' which differs from its common meaning . . . ." Based upon our review of the record in light of the principles governing the determination of commercial meaning set forth above, we cannot reject that finding as clearly erroneous.

The appellant's expert witness, Reinhart, whom the court described as "possess[ing] excellent qualifications indicating a lifelong career devoted to researching and evaluating plastic materials," had been the chairman of a subgroup at the American Society for Testing and Materials, an organization Reinhart called "the largest and probably the most influential standardization body in the whole world." His subgroup attempted for two or three years to formulate a definition of "flexible," but the endeavor was unsuccessful "because there was not enough agreement to reach a definition." Instead, the subgroup used and defined the terms "rigid," "semirigid," and "nonrigid." Reinhart also testified that although the dictionary definition of "flexible" was "not the same in the plastic industry," he knew people in that industry who have said it is the same.

█ The appellant introduced evidence that the kind of acrylic sheet here involved was marketed or described in sales and promotional literature not as flexible, but as rigid. That evidence, however, did not affirmatively establish a commercial meaning of flexible that differs from the dictionary definition.

█ In a recent case in which it was contended that the tariff items "clasps" and "sew-on fasteners" had commercial meanings different from their common meanings, we held that the appellant had "failed to establish commercial designations for those terms which are 'definite, uniform and general' throughout the United States. The opinion of [appellant's] witnesses, that the fasteners are not known as clasps or sew-on fasteners in the garment trade, is not conclusive proof of the required commercial meanings . . . ." *Bar Zel Expediters, Inc. v. United States,* 698 F.2d 1210,

1212, (Fed.Cir.1983). That principle applies equally in this case. The doctrine of commercial meaning reflects an assumed congressional intent to adopt for Customs purposes the accepted industry meaning of a term. A showing that the industry routinely uses the negative or opposite of the term is not sufficient to establish that Congress adopted the industry's view that a particular product is to be classified under a particular item.

Although the Court of International Trade did not explicitly find that the acrylic sheet here involved was flexible under the ordinary or dictionary meaning of that term, that determination was implicit in its decision upholding the classification. The court pointed out that the government's witness had observed two men at the importer's office flex a sheet of acrylic so that the ends touched without breaking the sheet, and that in a demonstration at the trial the witness, together with the appellant's counsel, had been able to bend acrylic sheets "to a great degree without breaking."

■ B. The appellant argues that the legislative history of the tariff provision at issue shows that Congress intended acrylic sheet to be classified under item 771.45 as "other" than "flexible." The argument is somewhat intricate, but there is no need to explicate it here. The legislative history of the Act of November 8, 1977, Pub.L. No. 95–160, 91 Stat. 1271 (amending the Tariff Schedules), shows that Congress recognized that acrylic sheet might be classified as either flexible or nonflexible.

The Senate committee report stated: "Imports of flexible sheets of acrylic resin are now dutiable under TSUS item 771.42 [now 771.41] .... Imports of nonflexible sheets of acrylic resin are now dutiable under TSUS item 771.45 ...." S.Rep. No. 419, 95th Cong., 1st Sess. 3–4, *reprinted in* 1977 U.S.Code Cong. & Ad.News 3369, 3371. Since in the 1977 amendment Congress made no change in the tariff provisions here involved, the inference is compelling that Congress intended that acrylic sheet could be classified either as "flexible" or as "other" than flexible (*i.e.,* nonflexible).

The legislative history contains an additional indication that Congress viewed the term "flexible" in these tariff items as carrying its common or dictionary meaning. In 1977 the chairman of the House subcommittee requested that "in order to clarify the dutiable status of acrylic sheets," the Customs Service give the committee "an explanation of our practice with respect to the term 'flexibility' as it applies to acrylic sheets classifiable under item 771.42." Letter from G.R. Dickerson to Representative Charles A. Vanik (July 13, 1977). In response, the Acting Commissioner of Customs stated that the agency's practice "is guided by" the *Sekisui* case. He then stated:

> The court's test is exceptionally broad and has caused some administrative difficulty. Further, it appears that as a result of the court's decision some merchandise is being treated as flexible for tariff purposes which was not so regarded by the framers of the tariff schedules.
>
> A quantitiative [sic] test, based on the modulus of elasticity in flexure would be easier to administer and lead to more consistent results.

*Id.* The "modulus of elasticity in flexure" test—under which these acrylic sheets would be classified as "other" than "flexible"—is the one the appellant urges as the proper basis for determining flexibility *vel non.*

Congress, however, made no change in these items, although it did change other parts of the tariff schedules. This failure to take any action in response to the government's suggestion that a change from the dictionary meaning in *Sekisui* would be appropriate, at least suggests that the Congress acquiesced in the *Sekisui* interpretation of the term "flexible."

The decision of the Court of International Trade is affirmed.

AFFIRMED.