**LEN–RON MANUFACTURING CO., INC., Aramis, Inc. (doing business as Len–Ron Manufacturing Co.), Aramis, Inc., and Clinique Laboratories, Inc., Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 02–1495.**

United States Court of Appeals, Federal Circuit.

July 3, 2003.

William C. Shayne, Tompkins & Davidson, LLP, of New York, NY, argued for plaintiffs-appellants.

Mikki Graves Walser, Attorney, International Trade Field Office, Department of Justice, of New York, NY, argued for defendant-appellee. With her on the brief were Robert D. McCallum, Jr. Assistant Attorney General; David M. Cohen, Director; Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC; and John J. Mahon, Acting Attorney in Charge, International Trade Field Office, Department of Justice, of New York, New, NY. Of counsel was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of New York, NY.

Before LINN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and PROST, Circuit Judge.

PROST, Circuit Judge.

Len–Ron Manufacturing Co., Inc., Aramis, Inc., and Clinique Laboratories, Inc. (collectively "Len–Ron") appeal from the decision of the United States Court of International Trade granting the government's cross-motion for summary judgment that various cosmetic bags imported by Len–Ron were properly classified under subheading 4202.12 of the Harmonized Tariff Schedule of the United States ("HTSUS"). *Len–Ron Mfg. Co. v. United States,* 118 F.Supp.2d 1266 (Ct. Int'l Trade 2000). Because we conclude that the United States Court of International Trade correctly classified the imported goods, we affirm.

I

The imported goods at issue are small bags made of polyvinyl sheeting imported for use in cosmetic sales promotions.

*Len–Ron,* 118 F.Supp.2d at 1270–71. These cosmetics bags "are supple, non-rigid and not supported by frames." *Id.* at 1270. They are of differing shapes and sizes and were variously invoiced by Len–Ron as "rectangular bag, halfmoon bag, fabric bag, travel bag, PVC sponge bag, reusable bag, cosmetic case, cosmetic bag, GWP sunnysider, hatbox U.S.A. bag, new stone open bag, horizontal tote, fabric mirror pouch, nylon cosmetic bag, generic bag, nylon drawstring bag, and cosmetic pouch." *Id.* The parties have stipulated that the cosmetics bags were intended to be used to contain and "to organize and segregate cosmetics [and toiletry products]." *Id.* at 1280.

The United States Customs Service ("Customs") initially classified the polyvinyl cosmetic bags at issue under subheading 4202.92,[1] a residual provision covering "[t]ravel, sports and similar bags" dutiable at a rate of 20 percent *ad valorem. Id.* at 1273. Len–Ron protested this classification and subsequently challenged it in the Court of International Trade. Len–Ron contended that the bags were properly classified as "[a]rticles of a kind normally carried in the pocket or in the handbag" under subheading 4202.32,[2] dutiable at a rate of 12.1 cents per kilogram plus 4.6 percent *ad valorem. Id.* at 1271. Before the Court of International Trade, the government argued that, as an alternative to Customs' initial classification, the bags

could be classified as "vanity cases" under subheading 4202.12,[3] dutiable at a rate of 20 percent *ad valorem. Id.*

On cross-motions for summary judgment, the Court of International Trade rejected Customs' initial classification and held the bags properly classifiable as "vanity cases" under subheading 4202.12. *Id.* at 1285. Although it found the cosmetics bags *prima facie* classifiable as both "vanity cases" and "[a]rticles of a kind normally carried in the pocket or the handbag," the court concluded that, under the rule of specificity, the merchandise at issue was most appropriately classified as "vanity cases."

In reaching this conclusion, the court first found that the bags were properly classified under Heading 4202, which covers "travel goods, handbags and similar containers," and then considered classification under each of the three competing subheadings advocated by the parties. Beginning with subheading 4202.12, the court noted that this subheading includes an *eo nomine* tariff designation for "vanity cases." *Id.* at 1280. Finding that the term was not clearly defined within HTSUS and that Congress did not specify any intent as to the definition of the term, the court turned to dictionary sources. After comparing several definitions, the court concluded that the common meaning of the term "vanity case" includes "a small

1. Subheading 4202.92 reads in relevant part:

4202.92 With outer surface of sheeting of plastic or of textile materials:
Travel, sports and similar bags:
* * *
4202.92.45 Other . . . . . . . . . . . . . . . . . . . . . . .
20%

2. Subheading 4202.32 provides in relevant part:

Articles of a kind normally carried in the pocket or in the handbag:
* * *

4202.32 With outer surface of sheeting of plastic or of textile materials:
With outer surface of sheeting of plastic:
4202.32.10 Of reinforced or laminated plastics . . . 12.1 cents/kg + 4.6%

3. Subheading 4202.12 reads in relevant part:

Trunks, suitcases, vanity cases, attaché cases, briefcases, school satchels and similar containers:
4202.12 With outer surface of plastics or of textile materials:
4202.12.20 With outer surface of plastics . . . . . . . . . . . . . . 20%

handbag or case used to hold cosmetics." *Id.* The court rejected an argument by Len–Ron that this definition should be narrowed based on terminology used in the drafting process allegedly indicating that the term "vanity cases," as used in HTSUS, was intended to be the equivalent of a French term that meant a small piece of luggage for carrying cosmetics. *Id.* at 1280–81. Accordingly, finding that Len–Ron's cosmetics bags met the common meaning of "vanity cases," the court held them to be *prima facie* classifiable under subheading 4202.12. *Id.* at 1281.

Turning to subheading 4202.32, "[a]rticles of a kind normally carried in the pocket or in the handbag," the court noted that the parties had stipulated that the cosmetics bags were small enough to be carried in a handbag and that women frequently carry cosmetics in their handbags. *Id.* at 1283. In addition, the court cited expert testimony that "women normally carry cosmetics bags in their handbags." *Id.* Accordingly, the court held that Len–Ron's cosmetic bags were *prima facie* classifiable under subheading 4202.32. *Id.* at 1284.

In considering the last of the three competing subheadings, the court held that because it had found the merchandise at issue *prima facie* classifiable under two alternative subheadings that covered the cosmetic bags more specifically, classification under the residual provision encompassing "[t]ravel, sports and similar bags" would be incorrect. *Id.* at 1284. The court therefore rejected classification under subheading 4202.92.45. *Id.*

With respect to the remaining two subheadings, the court applied the rule of specificity set out in HTSUS General Rules of Interpretation ("GRIs"). *Id.* at 1285. GRI 3(a) provides that "[t]he [sub-]heading which provides the most specific description shall be preferred to [sub-]headings providing a more general de-

scription." *Id.* The court noted that, generally, a "use" provision (i.e., a provision describing articles by the manner in which they are used as opposed to by name) was considered more specific than an *eo nomine* provision (in which an item is identified by name). *Id.* However, the court also noted that this rule only applies when two subheadings "equally describe" the item at issue, and concluded that in this case, "vanity cases" more specifically describes the bags at issue. *Id.* The court therefore held that the bags were more appropriately classified as "vanity cases" under subheading 4202:12 rather than as "[a]rticles of a kind normally carried in the pocket or in the handbag" under subheading 4202.32.

## II

We review the Court of International Trade's grant of summary judgment without deference. *Mead Corp. v. United States,* 283 F:3d 1342, 1345 (Fed.Cir.2002). If we determine that there is no dispute of material fact, "our review of the classification of the goods collapses into a determination of the proper meaning and scope of the HTSUS terms that, as a matter of statutory construction, is a question of law," which we review *de novo.* *Aves. in Leather, Inc. v. United States,* 317 F.3d 1399, 1402 (Fed.Cir.2003) (citing *Mead,* 283 F.3d at 1345–46).

The GRIs of HTSUS and the Additional United States Rules of Interpretation guide our classification of goods. *JVC Co. of Am. v. United States,* 234 F.3d 1348, 1352 (Fed.Cir.2000). GRI 1 requires that a classification analysis begin by considering the language of the potentially applicable headings. *Orlando Food Corp. v. United States,* 140 F.3d 1437, 1440 (Fed. Cir.1998). "Only after determining that a product is classifiable under the heading should the court look to the subheadings to

find the correct classification for the merchandise." *Id.* Under GRI 3(a), when goods are *prima facie* classifiable under two or more headings, the merchandise should be classified under the heading that provides the most specific description. *Id.* at 1441.

 HTSUS terms are construed according to their common and commercial meanings, which are presumed to be the same absent contrary legislative intent. *N. Am. Processing Co. v. United States,* 236 F.3d 695, 698 (Fed.Cir.2001). In construing a tariff term, the court may rely on its own understanding of the term as well as upon lexicographic and scientific authorities. *Mita Copystar Am. v. United States,* 21 F.3d 1079, 1082 (Fed.Cir. 1994). The court may also refer to the Explanatory Notes accompanying a tariff subheading. *Id.* While these notes are not controlling legislative history, they are nonetheless intended to clarify the scope of HTSUS subheadings and to offer guidance in their interpretation. *Id.*

### III

 The principal issue in this appeal involves the correct definition of the tariff term "vanity case." [4] As described above, the Court of International Trade found that "vanity case" meant "a small handbag or case used to hold cosmetics," which ultimately led it to conclude that the bags were properly classified as "vanity cases" under subheading 4202.12 of HTSUS. Len–Ron contends that this definition violates "fundamental rules of statutory construction" because "[t]he dic-

tionary definitions on which the court relied were inconsistent, vague and overly broad" and "the court failed to resolve these discrepancies." Thus, Len–Ron argues that the trial court erred, *inter alia,* because its definition improperly fails to incorporate expert testimony regarding the characteristics of vanity cases, is impermissibly broad, and violates the legislative intent underlying HTSUS. The government responds that the trial court's definition correctly reflects the common meaning of "vanity case," is consistent with settled principles of statutory construction, and does not contravene legislative intent. We address these arguments in turn.

As an initial matter, Len–Ron contends that because the "lexicographical definitions or meaning of [the] term [are] vague, ambiguous or overly broad," the trial court was required to look to other sources to clarify the common and commercial meaning of the tariff term "vanity cases." Specifically, Len Ron argues that because the dictionary definitions of "vanity case" were not entirely consistent, the court was required to find this term ambiguous and rely on the definitions offered by Len–Ron's experts to resolve this alleged ambiguity. Although the court's definition reflected the predominant definition found in dictionary sources, Len–Ron contends that "uncontroverted expert testimony was available to the court to establish that a fitted or integrated mirror is an essential characteristic of *every* type of vanity bag, case, or box (or even compact) and there-

4. As stated above, the first step in the classification process is determining which heading covers the merchandise at issue. The government, Len–Ron, and the trial court all conclude that Len–Ron's cosmetics bags are properly classified within heading 4202. *See Len–Ron,* 118 F.Supp.2d at 1279–80. We agree. This court has noted that the essential characteristics of the exemplars listed in

Heading 4202 are to organize, store, protect and carry various items. *SGI, Inc. v. United States,* 122 F.3d 1468, 1471 (Fed.Cir.1997) (citing *Totes, Inc. v. United States,* 69 F.3d 495, 498 (Fed.Cir.1995)). The merchandise at issue is clearly classifiable within heading 4202. Thus, the real issue in this appeal is limited to which subheading properly applies to Len–Ron's cosmetics bags.

fore should have been included in the court's definition." At oral argument, counsel for Len–Ron confirmed that, in Len–Ron's view, all of the bags in question would come within the proper definition of "vanity case" if they contained mirrors. Thus, according to Len–Ron, the single necessary characteristic missing from the trial court's definition is apparently a "fitted or integrated mirror."

As the government correctly points out, the majority of dictionary definitions make no mention of a mirror and are consistent with the trial court's definition. Only one dictionary definition provided by Len–Ron lists a mirror as a necessary characteristic of a "vanity case." Accordingly, we disagree with Len–Ron's assertion that this case presents the type and scope of ambiguity that required the trial court to narrow and refine the definition of "vanity case" in the manner proposed by Len–Ron. We conclude that the court properly relied on the definition most commonly found in the lexicographical sources to derive the common meaning of this term.

■ "One who argues that a term in the tariff laws should not be given its common or dictionary meaning must prove that there is a different commercial meaning in existence which is definite, uniform, and general throughout the trade." *Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed.Cir.1984) (citing *Moscahlades Bros. v. United States*, 42 C.C.P.A. 78, 82 (1954)). We do not find Len–Ron's expert testimony sufficient to demonstrate a sufficiently definite and uniform commercial or

trade meaning requiring all "vanity cases" to have mirrors.

■ Moreover, the government provided testimony from a Customs employee that a "vanity case" had the characteristics of providing "storage, protection, portability, [and] organization" of cosmetics. He also stated that "vanity cases" can "run the gamut" from a relatively large "train case" to a small hand-held case for the application of cosmetics, such as a compact. These statements further support the trial court's broad reading of the term. Accordingly, we agree with the trial court's definition and hold that Len–Ron has failed to show that a mirror is a necessary aspect of a "vanity case," and, therefore, has failed to demonstrate a sufficiently definite and uniform trade definition to overcome the presumption that " '[t]he meaning of a tariff term is ... the same as its common or dictionary meaning.' " *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed.Cir.1988) (quoting *Rohm & Haas*, 727 F.2d at 1097). Similarly, we hold that Len–Ron has failed to demonstrate that the common or commercial meaning of "vanity cases" requires that the case be fitted with a mirror.[5]

Len–Ron next contends that the court's definition is so overbroad that it overlaps with other classification subheadings such as those covering handbags. Len–Ron argues that because virtually all women keep cosmetics in their handbags, then, by the court's own reasoning, all small handbags would be classifiable as "vanity cases," violating the rule that a statutory provision

---

5. Len–Ron contends that the trial court's failure to discuss its expert testimony constitutes reversible error. There is no evidence that the trial court somehow failed properly to consider this testimony. The fact that the trial court did not address a piece of evidence does not mean that the evidence was not considered. *FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d 521, 524 (Fed.Cir.1987); *see also Medtronic, Inc. v. Daig Corp.*, 789 F.2d

903, 906 (Fed.Cir.1986) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise."). In the absence of any evidence that the trial court actually failed to consider Len–Ron's expert testimony, we hold that it did not commit reversible error. *See Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1343 (Fed.Cir.2003).

should not be read so as to make another superfluous. *See, e.g., Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (counseling against such statutory constructions). Len Ron argues that the court should have applied the principle of *noscitur a sociis* (i.e., "known from its associates"), which states that a statutory term should be interpreted through an analysis of the meaning of associated words, to narrow its definition of "vanity cases." *See Jewelpak Corp. v. United States,* 297 F.3d 1326, 1331 n. 3 (Fed.Cir.2002) (explaining the principle of *noscitur a sociis* ). Applying this principle, Len–Ron argues that, because the articles listed in subheading 4202.12 include trunks, suitcases, attaché cases, briefcases, and school satchels, subheading 4202.12 was intended to refer to travel articles that are "of substantial construction" and "designed for independent and external carriage," and, thus, that "vanity cases" must be interpreted to have these attributes.

Citing *Lynteq, Inc. v. United States,* 976 F.2d 693, 697 (Fed.Cir.1992), the government responds that, absent an indication of legislative intent to the contrary, an *eo nomine* designation without terms of limitation includes all forms of the article. Accordingly, argues the government, resort to the principle of *noscitur a sociis* to narrow an *eo nomine* provision is warranted only when there is doubt as to the meaning of a statutory term. Thus, because the common meaning of the term "vanity case" can be ascertained by reference to lexicographical sources, the government contends that the application of this principle would be inappropriate here.

■ We agree with the Court of International Trade and the government that, in this case, all forms of the articles described as "vanity cases" were meant by Congress to be included in the definition of

that term. As the court noted, " 'an *eo nomine* designation, with no terms of limitation, will ordinarily include all forms of the named article.' " *Len–Ron,* 118 F.Supp.2d at 1281 (quoting *Carl Zeiss, Inc. v. United States,* 195 F.3d 1375, 1379 (Fed. Cir.1999) (citation omitted)). We find Len–Ron's argument that a broad definition of "vanity case" will impermissibly subsume other subheadings, such as those covering handbags, unpersuasive. Both Customs and the courts have demonstrated their ability to distinguish between articles based on their essential or primary use or characteristic. *See, e.g., Sports Graphics, Inc. v. United States,* 24 F.3d 1390, 1393–94 (Fed.Cir.1994). In affirming the Court of International Trade's conclusion that "vanity case" means "a small handbag or case used to hold cosmetics," however, we clarify that for a handbag or case to be classified as a vanity case, containing, carrying, or organizing cosmetics must be its predominant use, rather than simply one possible use.

We also agree with the government that, having found the term "vanity case" correctly defined by reference to lexicographical sources, it is unnecessary for us to resort to the principle of *noscitur a sociis* to determine the meaning of this phrase. However, to the extent that any doubt regarding the proper definition might remain, we note that Len–Ron's acknowledgment at oral argument that the addition of a mirror to the cosmetics bags at issue would bring them within the correct definition of "vanity cases" severely undermines its argument that vanity cases must be "of substantial construction" and "designed for independent and external carriage" because Len–Ron has represented that its bags are "supple, non-rigid and . . . not supported by frames" and not "appropriate for extended [independent] carriage." [6]

6. We also reject Len–Ron's sub-argument that the definition adopted by the Court of Inter-national Trade ignores the distinction be-

Accordingly, as noted above, Len Ron appears to have acknowledged that, despite its other arguments, the single essential characteristic missing from the court's definition is the presence of an integrated or fitted mirror and *not* the requirement that the article have the characteristics of luggage. Moreover, especially in light of the clear evidence that the common meaning of "vanity case" is not restricted to a type of luggage, we find any inference to the contrary that might be derived by applying the principle of *noscitur a sociis* to be insufficiently persuasive to overcome the presumption that the meaning of a tariff term is the same as its common or dictionary meaning. *See Brookside Veneers,* 847 F.2d at 789 (Fed.Cir.1988) (quoting *Rohm & Haas,* 727 F.2d at 1097).

Len–Ron's next argument is similarly undercut by its acknowledgment that its cosmetics bags would become "vanity cases" with the addition of mirrors. Len–Ron contends that the drafting history of HTSUS demonstrates that the *eo nomine* terms "vanity cases" and "mallettes de toilette," were, respectively, added in the English and French drafts of Heading 4202 and were intended to have the same meaning. Because "mallette" means "little trunk," Len–Ron contends that the drafters intended "mallettes de toilette" and "vanity cases" to be interpreted to describe hard-sided pieces of fitted luggage.

The government responds that working documents reflecting the drafting history of HTSUS were merely designed to frame issues for discussion and should be accorded very little weight in interpreting tariff terms. Alternatively, the government contends that where, as here, the tariff term is "plain and unambiguous," resort to the drafting history is unnecessary and inappropriate.

We agree with the trial court and the government that little weight should be accorded to the drafting history in this case. *Len–Ron,* 118 F.Supp.2d at 1281 n. 30. We conclude that any inference regarding legislative intent drawn from the drafting history is insufficient to compel us to hold that Len–Ron's proposed definition based on the drafting history should supplant the common, ordinary meaning derived from lexicographical sources. *See Clarendon Mktg., Inc. v. United States,* 144 F.3d 1464, 1470 (Fed.Cir.1998) (finding meaning of term sufficiently clear that consideration of legislative history arguments was unnecessary).

Having rejected all of Len–Ron's arguments to the contrary, we hold that the trial court's definition of "vanity case" as "a small handbag or case used to hold cosmetics" is correct. Therefore, we next determine whether the articles at issue fit within that definition, and are therefore *prima facie* classifiable as "vanity cases." Because Len–Ron's cosmetics bags are indisputably small handbags or cases designed and intended to hold cosmetics, we conclude that they are *prima facie* classifiable under subheading 4202.12 as "vanity cases."

## IV

■ We now turn to the question of whether Len–Ron's cosmetics bags are also *prima facie* classifiable under subheading 4202.32 as "[a]rticles of a kind normally carried in the pocket or in the handbag." As noted by the trial court, although subheading 4202.32 itself does not specifically list the articles that it covers, the applicable Explanatory Note states that this subheading "include[s] spectacle cases, note-cases (bill-folds), wal-

---

tween "cases" and "bags," with the term "cases" implying a more substantial article. In its advertising literature, Len–Ron itself

described the bags both as "cases" and "kits."

lets, purses, key-cases, cigarette-cases, cigar-cases, pipe-cases and tobacco-pouches." *Len–Ron,* 118 F.Supp.2d at 1283. The court went on to find that this subheading "appears to [encompass] items which have independent and various functions" but that are "normally carried in the pocket or in the handbag." *Id.* Accordingly, the essential characteristics of the articles falling within subheading 4202.32 are that they generally organize, store, protect, or carry items or contents that would be recognized as typically being carried in a pocket or handbag, and that they be of such a size that they would fit into a pocket or handbag. *See Totes, Inc. v. United States,* 69 F.3d 495, 498 (Fed.Cir. 1995).

The parties stipulated that cosmetics are normally carried by women on a daily basis and that women generally carry these cosmetics in their handbags. *Len–Ron,* 118 F.Supp.2d at 1283. There was also expert testimony that women normally carry cosmetics bags in their handbags. *Id.* Finally, the bags at issue are small enough to fit within a handbag and are designed and intended to carry cosmetics. *See id.* at 1270–71. Accordingly, we hold that the merchandise at issue is *prima facie* classifiable under subheading 4204.32 as "[a]rticles of a kind normally carried in the pocket or in the handbag."

## V

■■■ Having concluded that the cosmetics bags were *prima facie* classifiable under two alternative subheadings, we must apply the rule set forth in GRI 3(a), which provides that "[t]he [sub]heading which provides the most specific description shall· be preferred to [sub]headings providing a more general description." Under this "rule of relative specificity," a court " 'look[s] to the provision with re-

quirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty.' " *Carl Zeiss,* 195 F.3d at 1380 (Fed.Cir. 1999) (quoting *Orlando Food,* 140 F.3d at 1441 (Fed.Cir.1998)).

■■■ As the trial court noted, where a product is equally described by both a "use" provision and an *eo nomine* provision, the "use" provision is typically held to be the more specific of the two.[7] *Len–Ron,* 118 F.Supp.2d at 1285. However, as the court also correctly pointed out, this is not a binding rule of law, but rather a "convenient rule of thumb for resolving issues where competing provisions are in balance." *Id.* (quoting *Orlando Food,* 140 F.3d at 1441 (internal quotation marks omitted)). The court went on to explain that this rule of thumb was only applicable where the alternative competing provisions were "in balance" or "equally descriptive" of the article being classified. *Id.* Observing that subheading 4202.12 "specifies a single article for proper classification," where subheading 4202.32 "is a broad provision encompassing a variety of articles with specific and independent uses," the trial court found that subheading 4202.12, which expressly identifies "vanity cases," was the more specific of the two.

Len–Ron provides no compelling argument contradicting the court's well-reasoned conclusion. Accordingly, we agree with the court's determination regarding classification of the bags at issue. It is clear that "[a]rticles of a kind normally carried in the pocket or in the handbag" is not a typical "use" provision. The articles encompassed within this subheading vary widely and have different principal uses, whereas those classifiable as "vanity cases" must have the more specific charac-

---

**7.** The court correctly identified subheading 4202.32 as a "use" provision because it employs the language "of a kind." *See Len–Ron,* 118 F.Supp.2d at 1282 n. 31.

teristic of organizing, storing, or carrying cosmetics. Because we agree that subheading 4202.12 encompasses the merchandise at issue and is more specific than the competing subheading, we conclude that this merchandise is correctly classifiable as "vanity cases."

We have considered all of the remaining arguments properly presented to us by Len–Ron and find them unpersuasive and lacking in merit.

## CONCLUSION

For the reasons stated above, the decision of the Court of International Trade is affirmed.

*AFFIRMED.*