Slip Op. 04-35

# UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————————————
                                            :
P. L. THOMAS PAPER CO., INC.,               :
                                            :
              Plaintiff,                     :
                                            :
         v.                                  :    Court No. 99-00671
                                            :
UNITED STATES,                              :
                                            :
              Defendant.                     :
                                            :
—————————————————————————

[After trial, judgment entered for defendant.]

Dated: April 15, 2004

Law Offices of David C. Williams (David C. Williams), for plaintiff.

Peter D. Keisler, Assistant Attorney General, Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Mikki Graves Walser), Sheryl A. French, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border Protection, for defendant.

**OPINION**

**RESTANI, Chief Judge:**

This matter is before the court following trial. At issue is the proper classification of certain entries of paper intended for conversion into reinforced gummed tape for sealing cartons. The classification of the United States Bureau of Customs and Border Protection ("Customs"), then known as the United States Customs Service, was properly protested and suit was timely filed after denial of the relevant protests. The court has jurisdiction pursuant to 28

U.S.C. § 1581(a) (2000) (denial of protest).

The following facts are not in dispute:

1.      Plaintiff, P. L. Thomas Paper Company, Inc., is the owner and importer of record of the merchandise at issue.

2.      The entries at issue are:

> No. 204-0648151-3, made on February 15, 1996;
>
> No. 030-0132020-3, made on October 22, 1997;
>
> No. 030-0132148-2, made on October 29, 1997;
>
> No. 204-1756657-5, made on May 7, 1997; and
>
> No. 204-1757045-2, made on May 22, 1997.[1]

3.      The importer described the paper imported under cover of these entries as follows:

> [T]he paper [is] MG pure Swedish natural brown unbleached plain sulphate kraft paper. The paper is made from 100% virgin unbleached Swedish kraft pulp and is uncoated. . . . The paper is supplied on rolls maximum of 40" in diameter with varying widths from 49 to 97", each roll weights about 1,000 kilos. The paper has a minimum basis weight of 38 grs/ms (23#-24x36/500); a caliper reading of .002" +/-; and a high porosity measurement of 40/50 seconds 10cc gurley.

Pretrial Order Sch. C ¶ 8.

4.      The paper is imported in bulk and is intended for use and actually used in conversion to reinforced carton sealing tape.

5.      At all times relevant to this action, the Harmonized Tariff Schedule of the United States ("HTSUS") provided the following statutory provisions:

---

[1] This is a test case which may affect 157 other entries covered in other actions before the court.

Chapter 48 Note 5    In this chapter "<u>kraft paper and paperboard</u>" means paper and paperboard of which not less than 80 percent by weight of the total fiber content consists of fibers obtained by the chemical sulfate or soda processes.

Heading 4804    Uncoated kraft paper and paperboard, in rolls or sheets, other than that of heading 4802 or 4803:

*    *    *    *

Other kraft paper and paperboard weighing 150 g/m2 or less:

Subheading 4804.31            Unbleached:

*    *    *    *

Subheading 4804.31.40            Wrapping paper...................................Free

Subheading 4804.31.60            Other.................................................2.8% <u>ad valorem</u>

Subheading 4804.39            Other:

*    *    *    *

Other:

Subheading 4803.39.60            Other.................................................2.8% <u>ad valorem</u>

6.    The paper at issue is "kraft paper" and is classifiable under Heading 4804, HTSUS.

7.    Customs liquidated the imported kraft paper under subheading 4804.39.60, HTSUS, pursuant to Customs Headquarters Ruling Letter 961068 (dated June 3, 1999), as "Uncoated kraft paper and paperboard, in rolls or sheets, other than that of heading 4802 or 4803: Other kraft paper and paperboard weighing 150 g/m2 or less:  Other:  Other" at a duty rate of 2.8% <u>ad valorem</u>.

8.    Plaintiff, P. L. Thomas, claims that the imported merchandise is properly

classified under subheading 4804.31.40, as "Other kraft paper and paperboard weighing 150 g/m2 or less:  Unbleached:  Wrapping paper," a duty-free provision.

9.     The tariff term "wrapping paper" is not statutorily defined.  It is also not defined in the Explanatory Notes to the HTSUS.

10.     "Wrapping paper" is a class or kind of kraft paper which is manufactured, sold, and principally used for wrapping purposes.

At trial, plaintiff's witness, its president Richard Greene, testified.  He has more than three decades of experience in the paper business.  It was Mr. Greene's testimony that wrapping paper is a broad category of unbleached kraft paper falling within an 18–70 pound range, which is known for its strength, and that is principally used in the United States to make paper bags.  Tr. at 18–19, 21.  He testified further that, as imported, the paper at issue fits within this definition of wrapping paper.  Tr. at 41.  Mr. Greene's testimony also revealed:  The imported paper is made with a shiny, smooth machine glaze finish on one side and an unsmooth machine finish on the other side.  Tr. at 12.  It has a porosity measurement of 40 to 60 seconds, 100 cc. gurley, which indicates that it is a tight sheet suitable for coating with another substance.  Tr. at 14–15.  The imported paper has a minimum weight of 38 g/m², which is 23 pounds.  Tr. at 13.  The imported merchandise is a specialty paper known commercially as "gumming paper."  Tr. at 46, 48.  Subsequent to importation, the imported paper was laminated and coated with glue stain to make gummed sealing tape.  Tr. at 17, 24, 59–60.

The government's witness, Robert Sexton, has an equally long acquaintance with the paper industry, as well as formal academic training in the pulp and paper industry.  He testified as follows:  The imported paper does not move in the same channels of trade as "wrapping paper."

Tr. at 91–92. Typically, wrapping paper was sold to manufacturers of counter rolls.[2] Tr. at 91; see also Tr. at 25 (Greene). Presently, the primary paper industry is one of the largest users of wrapping papers for protecting large paper rolls and cut-sized sheets of photocopy paper. Tr. at 105; see also Tr. at 25 (Greene). Gumming paper, on the other hand, "would go to a gummer." Tr. at 91–92. The imported paper is not used in the same manner as "wrapping paper." Tr. at 107. Wrapping paper is coarse, unfinished paper used to wrap products. Tr. at 84, 93. Gumming paper is the raw material used to manufacture reinforced gummed tape and is not economically practical for wrapping purposes. Tr. at 92, 114.

The witnesses agreed that gumming papers and wrapping papers are both unbleached kraft paper with a base weight between 18.5 and 79 pounds, but that the other specifications for each type of paper differ. Tr. at 16, 18 (Greene), 100–01 (Sexton). Bulk paper destined to be gummed for use as reinforced tape is made to tight specifications that make it suitable for its intended end use. Tr. at 12–14, 17, 42 (Greene), 85–86, 116–17 (Sexton); see supra Uncontested Facts ¶ 3 (describing specifications of imported paper). Strength, porosity, and surface smoothness are important physical characteristics of gumming paper. Tr. at 17 (Greene), 90 (Sexton). Gumming paper also requires specifications for base weight, thickness, moisture content and wet strength, among other things. Tr. at 13–17 (Greene), 90 (Sexton). Wrapping paper, by contrast, has few required specifications beyond weight and strength, but the specifications can be customized for particular end uses. Tr. at 18, 27–28, 38 (Greene), 90,

---

[2] Counter rolls are not as widely used as they once were, but they are the familiar rolls of usually brown paper sometimes used in retail stores to wrap packages for customers. Counter rolls largely have been supplanted by bags or sacks. Tr. at 31.

108–11, 117 (Sexton).  Counter roll paper does not require specifications other than weight.  Tr. at 16, 42 (Greene), 108–09, 117 (Sexton).

The finished product, a roll of reinforced gummed tape (72mm x 114.3M) was admitted as Plaintiff's Exhibit 8.  A sample of the paper as imported was admitted as Plaintiff's Exhibit 1.

## DISCUSSION

The tariff interpretation issue, as framed by the parties at trial, is whether "wrapping paper" is a broad term covering all bulk kraft paper of an appropriate weight or whether the term is a more narrow one limited to paper intended for a wrapping or enclosing function.  Defendant argues for a very narrow definition limited to paper intended for making counter rolls.  It is not necessary, however, to reach such a narrow definition to resolve this case, as even a broader definition does not encompass the product at issue.

Although the parties presented evidence at trial, it was largely to help the court understand the meaning of a tariff term, an issue of law.[3]  The court is guided as to tariff interpretation principally by the one case on point, D. C. Andrews & Co. of Mass. v. United States, 55 Cust. Ct. 354 (1965).  The merchandise at issue there was paper board, which plaintiff claimed was classifiable as "wrapping paper."   The court held that the determination of whether

---

[3]  "It is well-settled that the meaning of tariff terms is a question of law, while the determination whether a particular item fits within that meaning is a question of fact." E.M. Chemicals v. United States, 920 F.2d 910, 912 (Fed. Cir. 1990).  Thus, as a matter of law, Customs's construction of a tariff term will be reviewed by the court de novo.  Myers v. United States, 21 CIT 654, 662, 969 F. Supp. 66, 73 (1997).

a class of paper is "wrapping paper" under the tariff schedules is governed by the paper's "chief use."[4]  Id. at 357.  In ruling against the plaintiff, the court stated:

> [A]ll of the witnesses who were asked to comment upon the matter distinguished paper such as is here involved from the kind of coarse paper which the trade might consider to be wrapping paper and agreed that the subject paper was of a class or kind used for the making of tags, labels, and file folders.  These are uses which we do not find synonymous with, nor so related to, the process of enclosing and covering a package, as to respond to characterization as wrapping paper uses.

Id. at 361.  The court also noted plaintiff's attempt, similar to that of plaintiff here, to include a large variety of papers within the term "wrapping paper."  It also relied on various dictionary definitions to ascertain the common meaning of that term.  Id.; see Myers, 21 CIT at 662, 969 F. Supp. at 73 ("In ascertaining common meaning, the court may rely on its own understanding of the term used, and may consult dictionaries, scientific authorities, and other reliable sources of information.").

Here, several dictionary definitions were agreed on by the parties.  They are similar to those relied on in D. C. Andrews and are as follows:

1.     The Oxford English Dictionary (2d ed. CD-ROM 1999), defines the term "wrapping paper" as a "special make of strong paper for packing and wrapping up parcels."

2.     The term "wrapping paper" is defined in John R. Lavigne's Pulp & Paper Dictionary 477 (1986) as "[p]aper with high strength and of different weights made especially to be used for wrapping purposes."

---

[4]  If the tariff classification had aspects of an eo nomine provision, this would not change the outcome as common meaning would still control.  Becker Glove Int'l, Inc. v. United States, No. 02-00278, Slip Op. 02-55 at 2 (Ct. Int'l Trade June 18, 2002) (construing eo nomine designation that was not defined in the HTSUS "according to its common and popular meaning"); see infra n.5.

3.      The American Paper Institute, Inc.'s The Dictionary of Paper 456 (4th ed. 1980)

provides that "wrapping paper" is "[a] general term applied to a class of papers made of a large

variety of furnishes on any type of paper machine and used for wrapping purposes.  Strength and

toughness are predominant qualities."  See also The Dictionary of Paper 482 (3d ed. 1965).

4.      The Dictionary of Paper 389 (2d ed. 1951) defines "wrapping paper" as being:

"[a] general term applied to a class of papers made of a large variety of furnishes on a

Fourdrinier, cylinder, or Yankee machine and used for wrapping purposes.  Strength and

toughness are predominant qualities."

The one dictionary which assists plaintiff is E. J. Labarre's Dictionary and Encyclopedia

of Paper and Paper-Making 373 (2d ed. 1952), published in Amsterdam, Netherlands, which lists

over thirty uses for "wrapping paper" including "sealings."  This lone and somewhat old source

does not convince the court that the D. C. Andrews common meaning definition is wrong.[5]  First,

this foreign source may not reflect current HTSUS meaning of the term "wrapping paper."

Second, as recognized by D. C. Andrews, the common understanding of the term "wrapping

paper" is paper chiefly used to wrap or envelop an object.  There is no dispute that the "particular

class or type" of gumming paper imported here is specifically engineered for conversion to

reinforced gummed tape.  In examining the product as imported, Plaintiff's Exhibit 1, it is readily

apparent that one side has been made very smooth in preparation for glue coating and conversion

---

[5]  "When a tariff term is not clearly defined by either the HTSUS or its legislative history, the meaning of the term is generally resolved by ascertaining its common and commercial meaning."  Myers, 21 CIT at 662, 969 F. Supp. at 73 (citing W.Y. Moberly, Inc. v. United States, 924 F.2d 232, 235 (Fed. Cir. 1991)); see also Rohm & Haas Co. v. United States, 727 F.2d 1095, 1097 (Fed. Cir. 1984) ("The meaning of a tariff term is presumed to be the same as its common or dictionary meaning in the absence of evidence to the contrary.").

to gummed tape. Moreover, as the uncontradicted testimony of Mr. Sexton revealed, it is not

commercially practical to use this type of paper as wrapping paper. Accordingly, the court holds

that the imported gumming paper does not fall within the common understanding of "wrapping

paper."[6] See D. C. Andrews, 55 Cust. Ct. at 357, 361. Plaintiff has not met its burden of proving

that "there is a different commercial meaning in existence which is definite, uniform, and general

throughout the trade." Rohm & Hass Co., 727 F.2d at 1097 (internal quotation marks and

citation omitted).

The court does not decide whether papers made to bag or sack specifications are or are

not "wrapping papers." Bags and sacks envelop items in a way that sealing tape does not, and

their classification is not at issue here.

Accordingly, judgment shall enter for the defendant.


                                                    /s/  Jane A. Restani
                                                   Jane A. Restani
                                                   Chief Judge

Dated:  New York, New York.

This 15th day of April, 2004.

---

[6] Plaintiff did not argue that the tape end product is used to envelop anything, and in fact it does not. The tape is only 2.8" wide and is used only to seal packages.