Slip Op. 04-97

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: GREGORY W. CARMAN, JUDGE

|  |  |  |
|---|---|---|
| **FUJITSU AMERICA, INC.,** **FUJITSU IT HOLDINGS, INC.,** | : : : : | |
| **Plaintiffs,** | : : | |
| **v.** | : : | **Consol. Ct. No. 00-08-00429** |
| **THE UNITED STATES,** | : : | |
| **Defendant.** | : : : : | |

[Plaintiffs' motion for summary judgment is denied.  Defendant's cross-motion for summary judgment is granted.]

Dated: August 6, 2004

*Neville Peterson LLP* (*Michael K. Tomenga*, *Lawrence J. Bogard, George W. Thompson*), Washington, D.C., for Plaintiffs.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S. Williams*, Attorney-in-Charge, International Trade Field Office; *Saul Davis*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Chi S. Choy*, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, Of Counsel, for Defendant.

**OPINION**

**CARMAN, Judge:**  Plaintiffs Fujitsu America, Inc. and Fujitsu IT Holdings, Inc.

("Plaintiffs") move for summary judgment.  Plaintiffs challenge the United States Customs

Service's[1] ("Customs"), classification of the Coolant Distribution Unit of the Amdahl 5995M

---

[1] Now organized as the Bureau of Customs and Border Protection.

Series Processor mainframe computer. Defendant cross-moves for summary judgment, asserting that the Coolant Distribution Unit was properly classified as liquidated, under heading 8419 of the Harmonized Tariff Schedule of the United States ("HTSUS"). This Court has jurisdiction to review this matter under 28 U.S.C. § 1581(a) (2000). For the reasons detailed below, this Court denies Plaintiffs' motion for summary judgment and grants Defendant's cross-motion for summary judgment.

## BACKGROUND

The subject merchandise at issue in this case is a Coolant Distribution Unit ("CDU"), a component of the Amdahl 5995M Series Processor mainframe computer system ("Amdahl Processor"), an automatic data processing ("ADP") machine. (Pls.' Statement of Material Facts Not in Dispute ("Pls.' Statement") ¶¶ 1, 3; Def.'s Resp. to Pls.' Statement of Material Facts to Which There Is No Genuine Dispute ("Def.'s Resp.") ¶¶ 1, 3.) The CDU design is an "air-cooled heat exchanger type." (Pls.' Statement ¶ 2; Def.'s Resp. ¶ 2.) This CDU is only compatible for use with and is used exclusively with the Amdahl Processor. (Pls.' Statement ¶ 4; Def.'s Resp. ¶ 4.) According to Plaintiffs' product literature, the CDU has three basic functions: "heat exchange, coolant distribution, and MLA cooling." (Pls.' Resp. to Def.'s Statement of Material Facts as to Which There is No Genuine Dispute ("Pls.' Resp.") ¶ 2; *see aslo* Def.'s Statement of Material Facts as to Which There is No Genuine Dispute ("Def.'s Statement") ¶ 2.) "In the heat exchange function, the [CDU] collects the heat generated in the [multilayer glass ceramic assembly ("MLA")] and dissipates that heat." (Def.'s Statement ¶ 3; Pls.' Resp. ¶ 3.) "In the coolant distribution function, the [CDU] supplies coolant to the MLAs, in conjunction

with other parts of the [CDU]." (Def.'s Statement ¶ 4; Pls.' Resp. ¶ 4.) "In the MLA cooling function, the [CDU], in conjunction with other parts of the coolant distribution system, provides coolant which absorbs heat generated by the MLAs." (Def.'s Statement ¶ 5(A); Pls.' Resp. ¶ 5(A).)

The CDU "is attached to the Central Processor Unit frame of the [Amdahl Processor] by hoses, through which de-ionized water is pumped from the CDU to the [Central Processor Unit] frame and back." (Pls.' Statement ¶ 1; Def.'s Resp. ¶ 1.) The CDU is necessary for the operation of the Amdahl Processor because it "prevents the overheating of the [Amdahl Processor's MLAs] by enabling heat from the MLAs to conduct into the coolant and then radiate from the coolant into the ambient air." (Pls.' Statement ¶¶ 4, 12; Def.'s Resp. ¶¶ 4, 12.)

The CDU contains a Control Unit, which is comprised of "a control circuit containing a microprocessor unit ("MPU")," a sensor circuit board "that monitors the temperature of coolant in the [CDU's] Resorvoir Tank Module," "an electrical relay circuit board, a back panel and a power supply unit." (Pls.' Statement ¶¶ 6(a), (c); Def.'s Resp. ¶¶ 6(a), (c).) The Control Unit of the CDU has three functions: (1) "'Initialization,'in which [it] establishes electronic correspondence among the pumps"; (2) "'Control,' in which [it] starts and stops the fans and pumps in the CDU"; (3) "'Monitoring,'in which [it] collects data from sensors detecting coolant temperature, coolant level, coolant flow and fan speed." (Pls.' Statement ¶ 6(b); Def.'s Resp. ¶ 6(b).) "The Control Unit distributes coolant based on data received from . . . the [Amdahl Processor's] Service Processor component ("SVP")." (Pls.' Statement ¶ 6(a); Def.'s Resp. ¶ 6(a).) The MPU "includes a SVP interface to enable it to communicate with the SVP." (Pls.'

Statement ¶ 6(c); Def.'s Resp. ¶ 6(c).)  The SVP interface "consists of a serial interface and a power control interface."  (Pls.' Statement ¶ 6(c); Def.'s Resp. ¶ 6(c).)  The "serial interface interrupts the MPU."  (Pls.' Reply to Def.'s Resp. To Pls.' Statement of Facts as to Which There is No Genuine Dispute ¶ 6(c); Def.'s Resp. ¶ 6(c).)  The Control Unit's remaining components enable it to distribute coolant to the Amdahl Processor.  (Pls.' Statement ¶¶ 6(d-e), 7-9; Def.'s Resp. ¶¶ 6(d-e), 7-9.)

The subject entries were entered as "Automatic data processing machines and units thereof, . . .:Other," under subheading 8471.99.90[2], HTSUS, and its successor, subheading 8471.80.90, HTSUS, and as "Parts and accessories of the machines of heading 8471: not incorporating a cathode ray tube" under subheading 8473.30.40[3], HTSUS, and its successor subheading 8473.30.50, HTSUS.  (Pls.' Statement ¶ 14; Def.'s Resp. ¶ 14.)  The subject entries were liquidated as "Machinery, plant or laboratory equipment . . . for the treatment of materials

---

[2]  Subheading 8471.99.90 provides:

    8471   Automatic data processing machines and units thereof; magnetic or optical readers, machines for transcribing data onto data media in coded form and machines for processing such data, not elsewhere specified or included:

\* \* \*

    8471.99        Other

    8471.99.90              Other . . . . . . . . . . . . . . . . . . .  3.7%

[3]  Subheading 8473.30.40 provides:

    8473   Parts and accessories (other than covers, carrying cases and the like) suitable for use solely or principally with machines of headings 8469 to 8472:

\* \* \*

    8473.30        Parts and accessories of the machines of heading 8471:

    8473.30.40              Not incorporating a cathode ray tube . . . . . . . . . . . . .  Free

by a process involving a change of temperature . . .: Other" under subheading 8419.89.50[4],

HTSUS, and it successor subheading 8419.89.90, HTSUS, at a duty rate of 4.2% *ad valorem.*

(Pls.' Statement ¶ 15; Def.'s Resp. ¶ 15.)

Plaintiffs timely filed protests challenging the classification of the subject entries under

8419.89.50, HTSUS, and its successor subheading between 1995 and 1997.  (Pls.' Statement ¶

16; Def.'s Resp. ¶ 16.)  In June 1998, Customs issued Headquarters Ruling Letter HQ 960415,

denying Plaintiffs' protests.  Customs Ruling Letter HQ 960415 (June 9, 1998) ("HQ 960415")

at 6 (Pls.' Ex. E) (Def.'s Attach. to Reply); (*see also* Pls.' Statement ¶¶ 17, 18; Def.'s Resp. ¶¶

17, 18.)  In HQ 960415, Customs evaluated the information about the CDU provided to it by

Plaintiffs and determined that the CDU was "described under subheading 8471.99.90, HTSUS,"

and under heading 8419, HTSUS.  HQ 960415 at 4-5.  Having found the CDU classifiable under

two headings, Customs applied Chapter 84, Note 2 and concluded that the CDU is "better

described under subheading 8419.89.50." *Id.* at 5 (quoting Chapter 84, HTSUS, Note 2 ("[A]

machine or appliance which answers to a description in one or more of the headings 8401 to

8424 and at the same time to a description in one or more of the headings 8425 to 8480 is to be

---

[4]    Subheading 8419.89.50 provides:

> 8419    Machinery, plant or laboratory equipment, whether or not electrically
> heated, for the treatment of materials by a process involving a change of
> temperature such as heating, cooking, roasting, distilling, rectifying,
> sterilizing, pasturizing, steaming, drying, evaporating, vaporizing,
> condensing or cooling, other than machinery or plant of a kind used for
> domestic purposes; instantaneous or storage water heaters, noneletric;
> parts thereof:
>
> * * *
> 8419.89          Other:
>
> 8419.89.50                Other . . . . . . . . . . . . . . . . . . .    4.2%

classified under the appropriate heading of the former group and not the later."). Customs also considered Plaintiffs' alternative classification under heading 8473, HTSUS, and concluded that "[b]ased upon [C]hatper 84, [N]ote 2, classification of the CDU in heading 8473, HTSUS, is precluded. (*Id.* at 6 (referring to Section XVI, Note 2, HTSUS).

Plaintiffs timely filed their summons with the Court to challenge Customs' decision in HQ 960415. (Pls.' Statement ¶ 19; Def.'s Resp. ¶ 19.) In March 2000, Customs denied an additional protest pursuant to HQ 960415. (Pls.' Statement ¶ 20; Def.'s Resp. ¶ 20.) Plaintiffs again filed suit to challenge this Customs decision. (Pls.' Statement ¶ 21; Def.'s Resp. ¶ 21.) The two matters were consolidated in July 2002 by order of this Court. (Pls.' Statement ¶ 22; Def.'s Resp. ¶ 22.)

## STANDARD OF REVIEW

A party's summary judgment motion will be granted if the record before the Court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "In classification actions, summary judgment is appropriate when there is no genuine dispute as to . . . what the merchandise is . . . or as to its use." *Ero Indus., Inc. v. United States*, 118 F. Supp. 2d 1356, 1359-60 (Ct. Int'l Trade 2000). When there are no factual issues in dispute, "the 'propriety of the summary judgment turns on the proper construction of the HTSUS, which is a question of law,' subject to *de novo* review." *Toy Biz, Inc. v. United States*, 248 F. Supp. 2d 1234, 1241 (Ct. Int'l Trade 2003) (quoting *Clarendon Mktg., Inc. v. United*

*States*, 144 F.3d 1464, 1466 (Fed. Cir. 1998); *Nat'l Advanced Sys. v. United States*, 26 F.3d 1107, 1109 (Fed. Cir. 1994); and citing 28 U.S.C. § 2640(a)(1)).

Customs classification rulings are entitled to some degree of deference. *See United States v Mead Corp.,* 533 U.S. 218, 234-35 (2001) (quoting *Christensen v. Harris County,* 529 U.S. 576, 587) (Customs "classification rulings are best treated like 'interpretations contained in policy statements, agency manuals, and enforcement guidelines.' They are beyond the *Chevron* pale. To agree . . . that Customs ruling letters do not fall within *Chevron* is not . . . to place them outside the pale of any deference whatever. *Chevron* did nothing to eliminate *Skidmore*'s holding that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires."). The Court may uphold a Customs classification ruling based upon its "power to persuade," *Id.* at 235 (quoting *Skidmore v. Swift & Co.*, 234 U.S. 134, 140 (1944) (citations omitted); *see also Rubie's Costume Co. v. United States,* 337 F.3d 1350 1355 (Fed. Cir. 2003), the degree of which is determined by "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements." *Skidmore*, 234 U.S. at 140.

In the present case, the parties have stipulated to the material facts and no genuine issues of material fact remain in dispute as to the nature of the merchandise or its use. Therefore, the Court's task is to construe the relevant classification headings at issue and decide on summary judgment the proper classification under which the merchandise falls. *See Bausch & Lomb Inc.,*

*v. United States,* 148 F.3d 1363, 1366 (Fed. Cir. 1998).

**PARTIES' CONTENTIONS**

I.       *Plaintiffs' Contentions*

Plaintiffs argue that the CDU is properly classified under subheading 8471.99.90, HTSUS, "Automatic data processing machines and units thereof: . . . Other." (Pls.' Mem. of P. & A. In Supp. of Their R. 56 Mot. for Summ. J. ("Pls.' Mem.") at 2.) In the alternative, Plaintiffs assert that the CDU should be classified under subheading 8473.30.40, HTSUS, "Parts and accessories of [ADP] machines: Not incorporating a cathode ray tube . . . Other." (*Id.* at 2-3.) Plaintiffs assert that Customs' classification of the CDU under subheading 8419.89.50, HTSUS, "Machinery, plant or laboratory equipment . . . for the treatment of materials by a process involving a change in temperature . . . : Other: Other," is incorrect. (*Id.* at 20.)

Plaintiffs note that Customs found that the CDU "is described in heading 8419, HTSUS, in that it is designed to submit the circulating water to a cooling process to cause a simple change in temperature. The principal function of the CDU is to chill and channel water throughout the [Amdahl Processor] in such a way as to dissipate heat. . . . The principal purpose of the CDU is to subject water to a cooling process to dissipate heat arising from the [Amdahl Processor]. Without the chilled water, the [Amdahl Processor] could not operate properly for an extended period of time. . . . Again, the purpose of the CDU is to subject water to a cooling process to dissipate heat arising in the [Amdahl Processor]." (*Id.* at 20 (quoting HQ 960415 at 5).)

Plaintiffs contend that Customs' determination that the CDU is classifiable under heading 8419, HTSUS, is based upon four incorrect factual premises. (*Id.* at 15, 20.) First, Plaintiffs assert that the CDU does not "chill" water, as Customs asserted in HQ 960415. (*Id.* at 15, 20.)

Plaintiffs explain that "the temperature of the water circulated by the CDU is a function of the air temperature in the air conditioning system where the [Amdahl Processor] is located, the capacity of the Heat Exchange Module in the CDU and the power of the fan in the CDU." (*Id.* at 20-21.) Plaintiffs assert that the CDU cannot "chill" water and does not have the capacity to do so, as "the CDU does not contain any refrigeration equipment or any component that gives it the capability to refrigerate water or any other material." (*Id.* at 20.)

Second, Plaintiffs argue that the CDU does not "'treat' materials", as heading 8419 requires, "whether such materials are considered to be the coolant water or the MLAs." (*Id.* at 15, 21.) Plaintiffs contend that Defendant's assertion that the "CDU treats materials by a process involving a change of temperature rests entirely on the fact that [Plaintiffs'] product manuals use the terms 'cools,'[and] 'cooling'. . . However, [Defendant] completely ignores . . . [Plaintffs'] evidence as to what these terms actually mean in the context of the CDU's design, operation and function." (Pls.' Reply at 2-3 (citing Greenham Decl. (Pls.' Ex. A)).) Plaintiffs assert that the CDU does not "treat" materials because the CDU "does not alter the chemical or physical properties of any material, nor does it alter the character or performance of any material." (Pls.' Mem. at 21.) Plaintiffs explain that "the fundamental purpose of the CDU is to prevent physical changes to the MLAs and changes to their electronic functions and characteristics by maintaining their temperature at a level below that at which they would cease to function." (*Id.* at 22.) Plaintiffs, relying on the declaration of Walter Greenham, a Principal Systems Design Engineer employed by Plaintffs, insist that the operation of the CDU does not change the physical characteristics of the MLAs or the temperature of the MLAs, nor does the CDU change the

physical characteristics of the coolant water that is used in the operation.  (*Id.* at 21-22; Pls.'

Reply at 3 (citing Greenham Decl. (Pls.' Ex. A)).)  Plaintiffs state that "[t]he water remains liquid

water throughout the process . . . as it circulates through the hoses that connect the CDU to the

mainframe."  (Pls.' Mem. at 21)  Plaintiffs describe the process as follows:  "[i]n the mainframe,

heat from the MLAs is transferred to the water through physical contact between the MLAs and a

heat transfer plate.  The warmed water leaves the mainframe and re-enters the CDU, [where the]

heat in the water radiates into the surrounding air in the 'Heat Exchange Module' . . . and fans

dissipate the warm air.  As a result, the water is again at a temperature close to that of the

ambient air."  (*Id.* at 22.)

Third, Plaintiffs dispute Customs' equating the "dissipation of heat" with what is

intended to be a "process" under heading 8419.  (*Id.* at 23.)  Plaintiffs explains that the CDUs

disburse heat from the MLAs "by transferring [the] heat through the medium of the coolant water

circulated by the CDU."  (*Id.*)   Plaintiffs argue that this transfer of heat is passive, similar to

"heat sinks" and "heat sink assemblies," which, Plaintiffs note, Customs has classified under

heading 8473.30.40, HTSUS, as "Parts and accessories of [ADP machines]: Not incorporating a

cathode ray tube: . . . Other."  (*Id.* at 24 (citing Customs Ruling Letter HQ 965204 (July 2, 2002)

(in turn citing Customs Ruling Letter NY P87761 (June 16, 2000) and Customs Ruling Letter

NY D88399 (March 24, 1999))).)  Plaintiff asserts that, accordingly, the dissipation of heat

function performed by the CDU cannot be considered a "process."  (*Id.*)

Forth, Plaintiffs insist that, contrary to Defendant's contention, the CDU does not change

the temperature of the MLAs or the coolant water as the water cycles through the Amdahl

Processor. (*Id.*) Plaintiffs contend that "[t]he purpose of [the] CDU is to <u>prevent</u> a change of temperature in the MLAs" by "keep[ing] the MLAs at a temperature close to that of the surrounding air." (*Id.*) Plaintiffs argue that, because the CDU circulates coolant water from the CDU to the MLA and back to the CDU, the CDU's "[o]peration . . . must . . . be analyzed (1) by looking at the entire cycle of coolant circulation within the [Amdahl Processor] or (2) by comparing the same point in the cycle over successive cycles." (*Id.* at 24-25.) Plaintiffs assert that "[c]omparing various points within a single cycle yields a false picture of the CDU's operation." (*Id.* at 25.) Plaintiffs advance that an examination of the "entire cycle of coolant circulation" demonstrates that "the coolant water leaves the CDU at a temperature close to the ambient air conditioning system," and returns to the CDU after cooling the MLAs at a temperature close to that of the ambient air. (*Id.*) Plaintiffs emphasize that the "CDU affects no change in the temperature of the MLAs. Rather, it maintains the temperature of the MLAs by providing a mechanism for transferring heat from the MLAs to the surrounding air. Indeed, the purpose of the CDU is to <u>prevent</u> any change in the temperature of the MLAs. If the CDU were to fail in this purpose, then sensors in the CDU would shut down the [Amdahl Processor]." (*Id.* at 26.)

Plaintiffs contend that, for the reasons discussed above, Customs incorrectly concluded that the CDU is described under heading 8419. (*Id.* at 27.) Plaintiffs note that Customs also found that "the CDU meets the requirements of an ADP unit in Chapter 84, note 5(B), HTSUS. Therefore, the CDU is described under [s]ubheading 8471.99.90." (*Id.* at 18 (quoting HQ 960415 at 4 (Pls.' Ex. E)).) Plaintiffs explain that Customs then used Chapter 84, Note 2, which

describes the process to use in selecting between two competing headings, to determine that the CDU should be classified under heading 8419. (*Id.* at 26-27.) Plaintiffs contend, however, that Customs reliance on Chapter 84, Note 2 was unnecessary, as heading 8419 does not describe the CDU. (*Id.* at 27.) Plaintiffs assert that, without Customs incorrectly determining that heading 8419 also describes the CDU, Customs would have classified the CDU properly under heading 8471, HTSUS. (*Id.*)

Plaintiffs contend that for the following four reasons, the CDU is correctly classified in heading 8471, as "ADP machines and units thereof." (*Id.* at 18.) Plaintiffs assert that Chapter 84, Note 5(B) "recognizes that ADPs may take the form of systems consisting of a number of separately housed units . . . [and] that a unit of an ADP machine is part of a complete system if it is (1) connectable to the central processing unit either directly or through other units, (2) specifically designed to be part of such a system, and (3) able to accept or deliver data in the form that can be used by the system." (*Id.*) Plaintiffs contend that the CDU meets the required criteria because: (1) the CDU is connected physically to the Central Processor Unit by the hoses through which the CDU pumps coolant to the Central Processor Unit and back and is electronically connected to the SVP component of the Amdahl Processor, and indirectly to the Central Processor Unit through the SVP; (2) the CDU is designed specifically and solely for use in the Amdahl Processor, which "is an ADP machine within the meaning of Heading 8471," and the CDU is essential to the operation of the Amdahl Processor; and (3) the CDU accepts and delivers data in a form that can be used by the Amdahl Processor. (*Id.* at 19.)

In the alternative, Plaintiffs contend that the CDU is classifiable under subheading 8473.30.40, HTSUS, as parts and accessories of ADP machines. (*Id.* at 27.) Plaintiffs assert that the rules of interpretation require the CDU be classified as a part of an ADP machine under subheading 8473.30.40, HTSUS. (*Id.* at 28 (citing General Rules of Interpretation ("GRI") 1 and Section XVI, Note 2, HTSUS).) Plaintiffs note that Customs has previously classified heat sink assemblies under this HTSUS heading. (*Id.* at 29.) Plaintiffs contend that the CDU serves the same function as the heat sink assemblies, in that the CDU disburses the heat generated by the Amdahl Processor's central processing unit. (*Id.*) Plaintiffs contend that, as a result, the CDUs should be classified as a part of an ADP machine within subheading 8473.30.40, HTSUS. (*Id.* at 30.)

## II.  *Defendant's Contentions*

Defendant asserts that Customs' finding that the CDU is described under heading 8419 is correct, and, as a result, Customs properly classified the CDU under heading 8419. (Def.'s Reply to Pls.' Opp'n to Def.'s Cross-Mot. for Summ. J. ("Def.'s Reply") at 5.) Defendant concedes that the CDU is also described under heading 8471, HTSUS, and could have been classified as Plaintiffs contend, were the CDU not "more properly classifiable [under heading 8419,] as machinery for the treatment of materials by a process involving a change in temperature, because of the primacy of Note 2 to Chapter 84." (Def.'s Mem. in Supp. of Its Opp'n to Pls.' Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Cross-Mot.") at 2.)

Defendant characterizes Plaintiffs' challenge to Customs classification of the CDU under heading 8419 as "[flying] in the face of the plain terms of the statute [and contrary] to consistent

admissions by [Plaintiffs]." (Def.'s Reply at 1.) Defendant summarizes Plaintffs' claim as follows: the CDU "is not described by the terms of [heading 8419] because the [CDU] does not treat materials by a process involving a change in temperature" and there is no treatment "because the chemical and physical properties of both the coolant and the MLAs do not change." (Def.'s Cross-Mot. at 8.)

Defendant states that "[t]he plain terms and legislative intent of Heading 8419 demonstrates that it was intended to encompass machinery and equipment that effect a change in temperature in a material." (Def.'s Cross-Mot. at 5.) Defendant emphasizes that the way in which a temperature change is effected is not critical, as long as a change in temperature has occurred. (*Id.*) Defendant notes that the parties agree that the CDU is "designed to and does effect a change in temperature in the MLAs and in the coolant." (*Id.* at 6.) Defendant states that this fact places the CDU directly within heading 8419, HTSUS. (*Id.*) Defendant continues that, because the CDU is described under heading 8419, "it cannot be classified in either of [Plaintiffs'] claimed provisions" because of Chapter 84, Note 2, HTSUS. (*Id.*)

Defendant asserts that tariff terms are "to be construed in accordance with [their] plain and common meaning." (*Id.* at 9 (citations omitted).) Defendant asserts that Plaintiffs base their arguments supporting the inapplicability of heading 8419, HTSUS, on interpretations of the terms of the provision that do not correspond to plain language and common meanings. (*Id.* at 8-9.) Defendant asserts that an examination of the common definitions for the words "treatment," "process," "cooling," and "cool" found in heading 8419 "demonstrate that the [CDU] is encompassed by the plain meaning of the terms in heading 8419, if the purpose of the [CDU] is

to subject the MLAs to a particular method, system, or technique of preparation, handling, or other treatment designed to lower the temperature of the MLAs or to make them cooler or less hot." (*Id.* at 9-10 (quoting RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1509 (1969) (defining "treatment" as "subjection to some agent or action")); WEBSTER'S THIRD NEW INT'L DICTIONARY (1981) (defining "process" as "to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result")); and OXFORD ENGLISH DICTIONARY, (2d ed. 1999) (defining "cooling" as "the action of the verb cool" and "cool" as "to become cool; to become less hot or warm")).) Defendant asserts that Plaintiffs have failed to show either "legal [or] lexicographical authority that contradicts the independent authority of the plain meaning and the scope of the statutory terms cited by the defendant" to establish that Custom's determination that the CDU is described under heading 8419 is incorrect. (Def.'s Reply at 3-4.)

Defendant contends that "[t]here is no dispute with respect to the design and function of the [CDU]." (Def.'s Cross-Mot. at 7.) Defendant argues that, based upon the process described in Plaintiffs' statement of material facts not in dispute establishes that there are "two stages where the [CDU] operates as a machine for the treatment of materials by a process that involves a change in temperature – when it cools the MLAs and when it cools the heated coolant." (*Id.* at 8.) Defendant identifies the CDU's "[three] basic functions [as] heat exchange, coolant distribution, and MLA cooling." (*Id.* at 3 (citing "Eagle Theory of Operation Coolant Distribution Unit (CDU)" ("Pls.' CDU Manual") at 1-1 (Pls.' Ex. B)).) Defendant notes that Plaintiffs' CDU Manual defines the purpose of the CDU is "[t]o ensure high [LSI] reliability and

performance the [CDU] controls cooling of the [MLAs] containing densely mounted LSI chips that give off large amounts of heat." (*Id.* at 4 (quoting Pls.' CDU Manual at 1-1 ( Pls.' Ex. B)).) Defendant notes that Plaintiffs' literature explains that the CDU "operates to control the temperature range of the coolant, and subsequently of the [MLAs]." (*Id.* (citing Pls.' CDU Manual at 3-1 to 3-7, 3-17, 3-18, 4-2 (Pls.' Ex. B)).) Defendant notes that the coolant, after absorbing the MLA's heat, is cycled through the CDU system, "where it is cooled and recirculated." (*Id.* (citing Pls.' CDU Manual at 1-6, 4-1, 4-2 (Pls.' Ex. B)).) Defendant notes that the circulation of the coolant by way of the CDU changes the temperature of the MLAs from warmer to cooler. (*Id.* at 5 (citing Pls.' CDU Manual at 2-1 ( Pls.' Ex. B)).)

Defendant argues that, contrary to Plaintiffs assertion that heading 8419 is inapplicable to the CDU "because the coolant remains liquid and does not convert into either a gas or a solid," the plain language of heading 8419 and the accompanying Explanatory Notes require no such transformation. (*Id.* at 11-12 (citing EN, 1st Ed. (1987) at 1173).) Defendant also refutes Plaintiffs "claim that [because] the [CDU] does not chill or refrigerate," it cannot be classified under heading 8419, as there is no chilling or refrigerating requirement. (*Id.* at 12.) Defendant notes that "[m]achinery and equipment that chill or refrigerate are provided for in Heading 8418." (*Id.*)

Defendant next addresses Plaintiffs' assertion that "the dissipation of heat is not a process." (*Id.* at 13.) Defendant states that "the dissipation of heat is synonymous with cooling, as "to cool" means "to become less hot or warm." (*Id.* (citing RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1147).) Defendant continues that "the dissipation of the heat generated

by the MLAs is accomplished through a series of steps which constitutes a 'process' as the term is defined. '[A] systematic series of actions directed to some end . . . [] [A] continuous action, operation, or series of changes taking place in a definite manner"'" (*Id.* at 13 (internal citation omitted).) Defendant notes that Plaintiffs describe the CDU's operation as "consist[ing] of successive steps." (*Id.* (citing Pls.' Mem. at 22).) Defendant concludes that "the essence of the [CDU] is encompassed by Heading 8419 – the treatment of the MLAs by a process (a method, system, or technique of preparation, handling, or other treatment) that effects a change of temperature in the MLAs, such as cooling;" therefore, Customs properly classified the CDU under this heading. (*Id.*)

Defendant asserts that, despite the fact that the CDU is described under heading 8471, "[b]y operation of Note 2 to Chapter 84, the classification of the [CDU] is in Heading 8419 and not Heading 8471." (*Id.* at 13-14.) Defendant asserts that Plaintiffs have failed to demonstrate that heading 8419 does not describe the CDU. (*Id.*) Defendant contends that Note 2 of Chapter 84 is very clear, and according to the instructions contained in Note 2, Customs' classification is correct. (*Id.* at 14.)

Defendant argues that, because the CDU is described by heading 8419, the CDU's cannot be classified under heading 8473 because of Chapter 84, Note 2. (*Id.*) Defendant continues that the Additional U.S. Rules of Interpretation 1(c) also prevents classification of the CDU under Plaintiffs' alternative heading. (*Id.*) Defendant concedes that the CDU "is solely or principally used as a part of the mainframe computer." (*Id.*) Defendant, however, notes that under the Additional U.S. Rules of Interpretation 1(c), "a provision for parts does not prevail over a

specific provision for such a part." (*Id.* (citing Additional U.S. Rules of Interpretation 1(c).) Defendant contends, that in this case, "Heading 8419 is the specific provision for the [CDU]." (*Id.*) Defendant adds that Note 2(a) to Section XVI also precludes classification of the CDU as a part. (*Id.* at 14-15.)

**DISCUSSION**

**I.      Customs Ruling Letter HQ 960415 is Persuasive and Entitled to *Skidmore* Deference.**

The Court applies the factors articulated in *Mead* to determine the degree of deference to accord Customs Ruling Letter HQ 960415: "its writer's thoroughness, logic and expertness, its fit with prior interpretations and any other sources of weight." *Mead*, 533 U.S. at 235; *see also Rubie's Costume*, 337 F.3d 1350 at 1355-56. The Court holds that HQ 960415 is entitled to *Skidmore* deference based upon its power to persuade.

Customs has "specialized experience" in classifying goods. *Mead*, 533 U.S. at 234. The Court finds that Customs thoroughly considered the information that Plaintiffs presented about the CDU and evaluated this information in light of the GRI, the relevant Chapter Notes, and Explanatory Notes, as well as a prior Customs determination interpreting one of the headings at issue in this case. *See* HQ 960415. After a thorough evaluation, Customs concluded that the CDU is described under both heading 8471, HTSUS, and heading 8419, HTSUS**,** and accordingly turned to Chapter 84, Note 2 to find that heading 8419 is the more precise classification for the CDU. As discussed in detail below, this Court holds that Customs' determination is correct.

## II.     Customs' Determination that the CDU is Described Under Heading 8419, HTSUS, as well as Heading 8471, HTSUS, is Correct.

Classification of merchandise entering the United States is governed by the GRIs of the HTSUS and the Additional United States Rules of Interpretation. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). "The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Id.* Under GRI 1, "a court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading. Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise." *Id.* at 1440 (citing GRI 1, 6).

"Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F. 3d 1375, 1379 (Fed. Cir. 1999) (citing *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1576 (Fed. Cir. 1989)). "A court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Id.* (citing *Baxter Healthcare Corp. Of Puerto Rico v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999). The party arguing that a term should not be given its common meaning bears the burden of proving that the term "has a different commercial meaning that is definite, uniform, and general throughout the trade." *Id.* (citing *Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed. Cir. 1984)). Additionally, the Court may look to

the Explanatory Notes to the HTSUS for guidance in interpreting the HTSUS. *See Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (citation omitted). While the Explanatory Notes are not "controlling legislative history," they may be useful in "clarify[ing] the scope of the HTSUS subheadings and [offering] guidance in interpreting its subheadings." *Rolerblade, Inc. v. United States*, 112 F.3d 481, 486 n.3 (Fed. Cir. 1997).

The parties both agree that Customs' determination that the CDUs could be classified under heading 8471, HTSUS, "[ADP] machines and units thereof," is correct. (Pls.' Mem at 18; Def.'s Cross-Mot. at 1.) The parties, however, dispute Customs' determination that the CDU is more appropriately classified under heading 8419, HTSUS, "Machinery, plant or laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change in temperature such as . . . cooling." (Pls.' Mem at 20; Def.'s Cross-Mot. at 1, 5-6.)

Plaintiffs argue that the CDU "does not 'treat' materials; that the dissipation of heat is not a 'process;' and the clear result of the CDU's operation is to maintain temperature, not change it." (Pls.' Mem. at 20.) Plaintiffs add that "[t]he terms 'cool,' 'cooling,' 'air cooling,' and similar terms, as used in [Plaintiffs'] product manuals, refer to the absorption of heat from the MLAs into the coolant and the radiation of that heat from the coolant to the surrounding air," which does not support Defendant's contention that the CDU causes a temperature change in the MLAs from warmer to cooler. (Pls.' Reply at 4.) Defendant argues that Plaintiffs' assertion that the CDU is not classifiable under heading 8419 because it does not cool anything is contrary to the plain meaning of the HTSUS terms and is contrary to Plaintiffs' own admissions. (Def.'s

Reply at 1.)  Defendant contends that the process by which the CDU prevents the MLAs from overheating involves a change of temperature from a heated state prior to the delivery of coolant to a cooler state after the delivery of the coolant.  (Def.'s Cross-Mot. at 5.)

The Court holds that, based upon undisputed evidence on the record, Customs properly determined that the CDU is described under heading 8419, HTSUS.  The parties do not dispute that the CDU is used to "prevent[] the overheating of the [MLAs] by enabling heat from the MLAs to conduct into the coolant and then radiate from the coolant into the ambient air."  (Pls.' Statement ¶ 12; Def.'s Resp. ¶ 12.)  The parties have agree that the "MLAs contain densely mounted LSI chips that give off large amounts of heat."  (Def.'s Statement ¶ 1; Pls.' Resp. ¶ 1.)  The parties do not dispute that the CDU treats the MLAs, which generate a great deal of heat during operation, with coolant in order to lower the temperature of the MLAs and keep the Amdahl Processor operating.  (Pls.' Statement ¶ 12; Def.'s Resp. ¶ 12.)  It is undisputed that the CDU operates to circulate a coolant that is at a lower temperature than the heated MLAs to the MLAs for the purpose of absorbing the heat emitted from the MLAs to lower the temperature of the MLAs.  (Def.'s Statement ¶¶ 3-5(A); Pls.' Resp. ¶¶ 3-5(A).)  The Court finds that Customs properly determined that the CDU is described under heading 8419, "Other machinery, plant or laboratory equipment . . . for the treatment of materials by a process involving a change of temperature such as . . . cooling," and accordingly, classifiable under heading 8419, HTSUS.  As previously discussed, Customs thoroughly considered the functions of the CDU in HQ 960415 to determine that the CDU was classifiable under heading 8419, HTSUS.  *See* HQ 960415 at 3-6.

Plaintiffs have presented no evidence to persuade the Court that Customs was incorrect in finding that heading 8419, HTSUS, correctly describes the CDU.

Contrary to Plaintiffs' contentions, heading 8419 does not require refrigeration of the coolant, or a transformation of the physical characteristics (e.g. from gas to solid) of any material in order for the CDU to be properly classified under this heading. Explanatory Note 84.19 states that heading 8419 "covers machinery and plant designed to submit materials (solid, liquid or gaseous) to a heating or cooling process in order to cause a simple change of temperature, or to cause a transformation of the materials resulting principally from the temperature change. . . . But the heading excludes machinery and plant in which the heating or cooling, even if essential, is merely a secondary function designed to facilitate the main mechanical function of the machine or plant." EN 84.19(q) (emphasis added).

Plaintiffs' assert that neither "[t]he dictionary definition of 'cool'" nor the use of the term "'cool' in product literature provide evidence of the design and operation" of the CDU, or support Defendant's assertion that the CDU "treats" materials. (Pls.' Reply at 6.) The Court finds that the definition and mention of the word "cool," as well as the undisputed evidence of the CDU's method of operation, support the holding that the CDUs cause a change in the temperature of the MLAs from warmer to cooler. It is undisputed that the MLAs generate a great deal of heat and that, in order for the MLAs to keep functioning, the heat must be reduced to some temperature lower than the temperature reached when the MLAs are operating. (Pls.' Statement ¶ 12; Pls.' Resp. ¶ 1; Def.'s Resp. ¶ 12; Def.'s Statement ¶ 1.) The Court is not persuaded by Plaintiffs' assertion that the operation does not cause a temperature change because

its purpose is to maintain the temperature of MLA at that of the ambient air.  The dictionary

defines "cool" as "to become cool: lose heat or warmth."  WEBSTER'S NEW COLLEGIATE

DICTIONARY 247 (1981).  The operation of the CDU, by its release of coolant, causes a "simple

change in temperature," from warmer to cooler, that is described in the Explanatory Note 34.19

to heading 8419.  Accordingly, the Court finds that Customs properly determined that the CDU is

described in heading 8419.

**III.     Because Customs Properly Determined that the CDU could be Classified Under Heading 8419 or Heading 8471, Customs Properly Applied Note 2 to Chapter 84 to Classify the CDU under Heading 8419.**

As stated above, Customs correctly determined that the CDU could be classified under

heading 8419 or heading 8471.  The Court holds that Customs, therefore, properly referred to

Chapter 84, Note 2 to determine which of the two competing headings constituted the proper

classification of the CDU.  Note 2 of Chapter 84 states that

> Subject to the operation of note 3 to Section XVI [which addresses composite machines composed of two or more machines], a machine or appliance which answers to a description in one or more of the headings 8401 to 8424 and at the same time to a description in one or more of the headings 8425 to 8480 is to be classified under the appropriate heading of the <u>former</u> <u>group</u> and not the latter.

Chapter 84, Note 2, HTSUS (emphasis added).  In this case, heading 8419 is "the appropriate

heading of the former group" of fitting headings, and, accordingly, the CDU is properly classified

under heading 8419, not heading 8471.

**IV.     Plaintiffs' Alternative Classification under Heading 8473 is Not Applicable by Operation of Note 2 to Chapter 84.**

Just as Note 2 of Chapter 84 precludes classification of the CDU under heading 8471, the operation of Note 2 also precludes classification under heading 8473, as parts for ADP machines. Accordingly, the Court holds that the CDU is not classifiable under Plaintiffs' suggested alternative heading 8473.[5]

CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied. Defendant's cross-motion is granted.

/s/ GREGORY W. CARMAN
Gregory W. Carman,
Judge

Dated:  August 6, 2004
           New York, New York

---

[5] Heading 8473 is a provision describing "[p]arts and accessories" of ADP machines. It is undisputed that the CDU is used solely as part of the Amdahl Processor. (*See* Pls.' Statement ¶ 4; Def.'s Resp. ¶ 4.) The Court finds, however, that because the CDU is properly described under heading 8419, HTSUS, and heading 8419 is the specific provision describing the CDU, heading 8419 is the prevailing provision. *See* Additional U.S. Rules of Interpretation 1(c) ("In the absence of special language or context which otherwise requires: . . .[a] provision for parts of an article covers products solely or principally used as a part of such articles but a provision for 'parts' or 'parts and accessories' shall not prevail over a specific provision for such part or accessory.")